*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# OPINION

No. 04-11-00101-CV

Hector **GARZA**,
Appellant

v.

**ZACHRY CONSTRUCTION CORPORATION**;
Zachry Industrial, Inc.; Gilbert Morales; and Anthony Rodriguez;
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-12469
Honorable Fred Shannon, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
    Sandee Bryan Marion, Justice
    Phylis J. Speedlin, Justice

Delivered and Filed:  May 23, 2012

AFFIRMED

This is an appeal from a take-nothing summary judgment rendered in favor of appellees. The issues on appeal center on a subcontractor's right to rely on the workers' compensation exclusive remedy bar contained in Texas Labor Code section 408.001 as made applicable to subcontractors by Labor Code section 406.123 when the subcontractor and its employees are sued by an employee of the premises owner/general contractor.  On appeal, appellant raises two issues: (1) appellees are not entitled to raise the exclusive remedy bar to preclude his common-

law claims against them, and (2) to the extent appellees may raise the bar to preclude his claims, doing so violates his rights under the Texas Constitution's open courts provision. We affirm the trial court's judgment.

## BACKGROUND

Appellant, Hector Garza, worked for DuPont as an operator at DuPont's plant in Ingleside, Texas. Appellee, Zachry Construction Corp. ("Zachry") was a subcontractor performing various services at the plant. Appellees, Gilbert Morales and Anthony Rodriguez, are Zachry employees who worked at the same DuPont plant.

On November 25, 2007, Garza operated a railcar mover pulling four tanker railcars. Morales and Rodriguez assisted him. Three of the cars came loose and collided with the railcar mover. As a result, Garza was injured, and he received workers' compensation benefits through a policy provided for him by his employer DuPont. Garza later sued Zachry, Morales, and Rodriguez (collectively, "the defendants"), alleging the negligence of Morales and Rodriguez caused the accident. Garza alleged Zachry was liable under the doctrine of respondeat superior.

The defendants moved for a traditional summary judgment on the ground that Garza's common-law claims were barred by Labor Code section 408.001 because his exclusive remedy is the recovery of workers' compensation benefits. The trial court rendered a take-nothing summary judgment in favor of the defendants and this appeal by Garza ensued.

## WORKERS' COMPENSATION BAR

Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance against the employer or an employee of the employer for a work-related injury sustained by the employee. TEX. LAB. CODE ANN. § 408.001(a) (West 2006). This exclusive remedy defense provided to subscribing employers is

also afforded to a general contractor if, pursuant to a written agreement, the general contractor provides workers' compensation insurance coverage to the subcontractor and its employees. *Id.* § 406.123(a).[1] A premises owner, such as DuPont here, can be a "general contractor" under section 406.123. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 438 (Tex. 2009).[2] "An agreement under [section 406.123] makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state." TEX. LAB. CODE § 406.123(e). As a result of section 406.123, "[s]uch [a "deemed"] employer is immune from claims brought by a subcontractor's employee because the employee's exclusive remedy is his workers' compensation benefits." *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). This immunity also "extends throughout all tiers of subcontractors when the general contractor has purchased workers' compensation insurance that covers all of the workers on the site." *Etie v. Walsh & Albert Co., Ltd.*, 135 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (barring employee of one subcontractor from suing employee of another subcontractor); *see also Funes v. Eldridge Elec. Co.*, 270 S.W.3d 666, 670-72 (Tex. App.—San Antonio 2008, no pet.) (same).

In this case, we do not have a subcontractor's employee suing a general contractor or the employee of another subcontractor. Under those circumstances, section 408.001 would bar the subcontractor's employee's claims and limit his recovery to workers' compensation benefits. Instead, here, we have the premises owner/general contractor's employee suing the subcontractor

---

[1] This type of agreement is commonly referred to as an Owner Controlled Insurance Program ("OCIP"). *See Briggs v. Toyota Mfg. of Tex.*, 337 S.W.3d 275, 280 (Tex. App.—San Antonio 2010, no pet.) (an OCIP is a program implemented by the owner of a construction site that is "designed to secure insurance, including workers' compensation insurance, at a reasonable price for all workers at the construction site.").

[2] We acknowledge that the contract here was executed before the Texas Supreme Court issued its opinion in *Entergy Gulf States*. Neither party argues that *Entergy Gulf States* should not be applied for the purpose of making DuPont, the premises owner, a "general contractor" under section 406.123. Therefore, we are guided by the analysis in that opinion.

and two of the subcontractor's employees. In their motion for summary judgment, the defendants argued that under section 406.123, DuPont was their deemed employer and Garza, Morales, and Rodriguez were all deemed fellow employees, for purposes of the exclusive remedy bar provided under section 408.001. In his first issue on appeal, Garza asserts Zachry contractually agreed its employees were not DuPont employees for "any purpose" pursuant to the terms of the contract between DuPont and Zachry. Therefore, Garza concludes, Zachry's two employees (Morales and Rodriguez) are not his fellow employees entitled to rely on the exclusive remedy bar.[3] In his second issue, Garza asserts that even if Zachry did not contractually agree its employees were not deemed employees of DuPont for workers' compensation purposes, his rights under the Texas Constitution's open courts provision is violated to the extent section 406.123 brings him within its scope as a fellow "deemed" employee precluded from suing DuPont's subcontractors. Garza's first issue presents a question of contract interpretation, while his second issue is one of first impression regarding the interpretation of a statute.

## THE DUPONT-ZACHRY CONTRACT

The issue presented here requires this court to construe the contract between the parties, and in doing so, our primary concern is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). To discern this intent, we "examine and consider *the entire writing* in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker v. Coker*, 650

---

[3] Garza's first issue is raised only with respect to the two Zachry employees (Morales and Rodriguez). His issue two (regarding open courts) challenges Zachry's and its employees' right to raise the workers' compensation bar.

S.W.2d 391, 393 (Tex. 1983) (emphasis in original) (citations omitted). Although the parties construe the obligations under this contract differently, a contract is not ambiguous merely because the parties disagree on its meaning. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981). "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). We conclude the contract here is not ambiguous; therefore, its meaning is a question of law. *Coker*, 650 S.W.2d at 394.

DuPont and Zachry entered into a "Contracted-Construction, Maintenance and Services Agreement," under which Zachry agreed to perform certain services for DuPont (the contract"). Under the contract, Zachry agreed to perform its services in accordance with "the DuPont General Conditions," which were an attachment to the contract. The General Conditions were "intended to define the rights and obligations of the Contractor [here, Zachry] with respect to four separate and distinct potential scopes of work 1) Construction/Maintenance Services, 2) Construction Management, 3) Plant Services, and 4) Professional Services/Staff Augmentation which shall be assigned to the Contractor pursuant to a Work Initiation Request ('WIR')." The General Conditions contain general provisions that apply to all scopes of work, including a provision that obligated DuPont as follows:

> Prior to the start of the Work or the performance of any Services hereunder, DuPont, at its expense, shall self-insure or procure and maintain in force at all times relevant hereto insurance coverage of the types and limits for the interest of Contractor [Zachry] as follows:
>
> > i. Workers' Compensation – Statutory; Employer's Liability – the greater of $500,000 per accident/per employee; or the requirements of such other insurance as may be required by law – Statutory. . . . .

Garza relies on the following provisions in the contract for his contention that DuPont and Zachry contractually agreed Zachry's employees would not be considered DuPont's employees for workers' compensation purposes, despite the above provision, or for any other purpose.

The General Provisions contain the following provision entitled "Limitation of Liability for Parties":

> A) Subject only to the exceptions set forth in this Section, DuPont and Contractor's respective total liability to each other under this Agreement for property damage, including damage or injury to the Work and/or to DuPont's or Contractor's property, including, but not limited to DuPont's plant, equipment and other facilities located on the Site or Project, shall not exceed twenty million dollars ($20,000,000) in any twelve month period, commencing with the Effective Date of the Agreement and the General Conditions.

> B) The limitation of liability set forth in Section A above shall apply to any loss or liability arising from claims asserted against DuPont or Contractor by third parties, including DuPont or Contractor employees, in connection with the [sic] DuPont's or Contractor's actions or performance under this Agreement.

The next several articles of the General Conditions set forth provisions specific to the four scopes of work. Article II contains the provisions specific to Construction/Maintenance Services. One of those provisions is entitled "Independent Contractor" and states as follows:

> The employees, consultants, subcontractor's methods, facilities, and equipment used by Contractor to perform Services shall be at all times under Contractor's exclusive direction and control. DuPont shall not control nor have any responsibility or liability therefore. Contractor's relationship to DuPont under the Agreement shall be that of an independent contractor and nothing in the Agreement shall be construed to constitute Contractor, its consultants, Subcontractor, or any of their employees as an employee, agent, associate, joint venture, or partner of DuPont.

Article V contains the provisions specific to Professional Services/Staff Augmentation Services. One of those provisions is entitled "Employment Status" and states as follows:

> The parties agree that no Contractor personnel supplied by Contractor under this Agreement shall be an employee of DuPont for any purpose. DuPont shall have

no obligation with respect to any insurance coverage, tax, contributions, or withholdings mandated or fixed by any city, state, province, country, or federal governmental agency, or any other such requirements that may be applicable to DuPont employees. Nor will the Contractor personnel be eligible to participate in or entitled to any benefits or rights under DuPont's various benefit plans, programs or policies, including, but not limited to, paid vacation, sick leave, disability leave, medical or life insurance, and/or retirement plan participation. DuPont shall also have no obligation to provide disability or unemployment insurance for any Contractor personnel supplied hereunder.

We disagree with Garza's arguments for several reasons. First, the "Limitation of Liability for Parties" provision clearly applies only to property damage and not personal injuries suffered by DuPont employees or employees of any contractor. Second, the language in the "Independent Contractor" provision simply clarifies the status of Zachry and its employees as independent contractors. *See Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990) (test for distinguishing between an employee and an independent contractor focuses on whether employer has right to control progress, details, and methods of operations of the work). This provision is consistent with the "Employment Status" provision, which we interpret as indicating the parties' intent that Zachry employees are not DuPont employees with respect to "any insurance coverage, tax, contributions, or withholdings . . . or any other such requirements that may be applicable to DuPont employees," and Zachry employees would not be entitled "to participate in or [be] entitled to any benefits or rights under DuPont's various benefit plans, programs or policies, including, but not limited to, paid vacation, sick leave, disability leave, medical or life insurance, and/or retirement plan participation."

Finally, section 406.123 indicates the Legislature's intent to extend the exclusive remedy bar contained in section 408.001 to general contractors that, pursuant to a written agreement, provide workers' compensation insurance coverage to the subcontractor and its employees. TEX. LAB. CODE § 406.123(a). Courts have judicially extended the reach of sections 408.001 and

406.123 to premises owners; *Entergy Gulf States*, 282 S.W.3d at 438; and horizontally and diagonally throughout all tiers of subcontractors; *Funes*, 270 S.W.3d at 670-72; *Etie*, 135 S.W.3d at 768. Thus, the Legislature and courts have created a legal fiction of premises owners/general contractors as "deemed employers," subcontractors as "deemed employees" of the premises owner/general contractor, and all tiers of subcontractors as "fellow employees" for purposes of the Act. *See Etie*, 135 S.W.3d at 767 ("The Act specifically recognizes this fiction by creating the deemed employee status and restricting its meaning only to the purposes of the Act.").

Under its contract with Zachry, DuPont agreed to provide workers' compensation insurance to Zachry; thereby, creating the legal fiction of DuPont as the "deemed employer" and Zachry and its employees as "deemed employees." Our interpretation of the contract as a whole is not inconsistent with the parties' intent that DuPont provide its "deemed employees" with the *statutory* benefits of workers' compensation coverage, but not provide these same "deemed employees" with the other more traditional employee benefits enjoyed by DuPont's actual employees. Further, our interpretation is consistent with Labor Code section 406.123, which states an agreement such as the one entered into between DuPont and Zachry makes DuPont "the employer of" Zachry and Zachry's employees "*only for purposes of the workers' compensation laws of this state*." TEX. LAB. CODE § 406.123(e) (emphasis added). Thus, we do not agree with Garza that the contract evidences an agreement that Zachry and its employees are not considered deemed employees of DuPont for the purpose of worker's compensation law. Accordingly, Morales and Rodriguez were entitled to assert the exclusive remedy bar.[4]

---

[4] We do not address Zachry's alternative argument that Garza is not a party to the contract between DuPont and Zachry and, therefore, he has no legal right to enforce its terms.

**TEXAS OPEN COURTS**

In his second issue, Garza asserts that if this court determines his common-law tort claims are barred against Zachry and its employees, then Labor Code sections 406.123 and 408.001 are unconstitutional as applied to him because they violate the Texas Constitution's open courts guarantee under the circumstances presented here. More specifically, Garza argues (1) a subcontractor who itself did not provide any workers' compensation insurance may not rely on the exclusive remedy bar to prohibit claims by the general contractor's employee who is not covered by the same workers' compensation policy as that provided to the subcontractor, and (2) if such a bar applies, it violates the open courts guarantee.

The Texas Constitution's open courts guarantee provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This provision assures that a person bringing a well-established common-law cause of action will not suffer unreasonable or arbitrary denial of access to the courts. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996). This guarantee includes at least three separate constitutional rights: (1) courts must actually be operating and available; (2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and (3) meaningful remedies must be afforded, "so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex. 1994). Garza's arguments are based on the third right.

Garza is not a Zachry employee and he was not covered by the workers' compensation policy his employer, DuPont, purchased for Zachry. Consequently, Garza asserts this court

should interpret section 406.123 as barring only those claims brought by employees who are covered under the same workers' compensation policy as he. Alternatively, Garza contends that because he received his workers' compensation benefits from a separate DuPont workers' compensation policy, he received no benefit from the other policy DuPont provided for Zachry. Therefore, Garza concludes that the open courts guarantee is violated because there is no "quid pro quo"—he has received no benefit from Zachry in exchange for his being forced to relinquish his common-law right to sue Zachry and its employees. We disagree with both arguments.

A statute has the effect of denying access to the courts if it unreasonably abridges a plaintiff's right to obtain redress for injuries caused by the wrongful acts of another. *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 783 (Tex. 2007). Proof of an open courts violation requires two elements: (1) a cognizable, common-law claim that is statutorily restricted, and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. *Id.* It is the second element that is at issue here. In the context of workers' compensation, the Texas Supreme Court has interpreted the second element as inquiring whether workers' compensation benefits serve as an "adequate substitute" to the injured employee's common law or statutory damages claim. *Tex. Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 521 (Tex. 1995); *see also Williams v. Razor Enters., Inc.*, 70 S.W.3d 274, 276 (Tex. App.—San Antonio 2002, no pet.). In other words, there must be a quid pro quo.

We, therefore, turn first to the language of the statute at issue:

(a) A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

. . .

(e) An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

TEX. LAB. CODE § 406.123(a), (e).

Our interpretation of this statute presents a legal question, which we review de novo to ascertain and give effect to the Legislature's intent. *Entergy Gulf States*, 282 S.W.3d at 437. Where text is clear, text is determinative of that intent. *Id.* This general rule applies unless enforcing the plain language of the statute as written would produce absurd results. *Id.* Therefore, when construing a statute we recognize that the words chosen by the Legislature should be the surest guide to legislative intent. *Id.* Only when those words are ambiguous do we "resort to rules of construction or extrinsic aids." *Id.* We construe the Workers' Compensation Act ("the Act") liberally in favor of coverage as a means of affording employees the protections the Legislature created. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex. 1986).

Nothing in section 406.123 specifies that when a general contractor purchases a workers' compensation policy for its own employees and also purchases a second policy for its subcontractors, then its own employees and its "deemed" employees may freely sue each other simply because they receive their coverage under different policies, albeit from the same "employer" for work performed at the same job site. We believe such a reading of section 406.123 would be contrary to the purpose of the legislation, which is to encourage coverage of employees. *HCBeck, Ltd.*, 284 S.W.3d at 350 (purpose of Act is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured); *Entergy Gulf States*, 282 S.W.3d at 441 (encouraging coverage for subcontractor's employees). To avoid such a result, general contractors would be forced to purchase a single global workers' compensation

policy that covered all employees, its own as well as subcontractors. But, "[t]he Act offers incentives to general contractors to provide workers' compensation coverage broadly to work site employees." *Entergy Gulf States*, 282 S.W.3d at 444. "In exchange, the Act specifically protects general contractors—who are not direct employers of subcontractors' employees—by allowing them to assert as a statutorily deemed employer the exclusive remedy defense." *Id.* "In light of this statutory protection, it would seem to be contrary to the state's public policy to read [deemed employees] out of the Act's protections" when the general contractor has purchased multiple policies rather than a single global policy. *See id.* Therefore, we decline Garza's invitation to interpret the statute as allowing a general contractor's employee to bring a common-law tort claim against a subcontractor and its employees when the general contractor's employee is provided coverage under a workers' compensation policy separate from the policy under which the subcontractor and its employees receive the same coverage. We next address whether this conclusion violates the open courts guarantee.

In deciding whether our conclusion violates the open courts guarantee, the relevant test is as follows:

> [L]egislative action withdrawing common-law remedies for well-established common-law causes of action for injuries to one's "lands, goods, person or reputation" is sustained only when it is reasonable in substituting other remedies, or when it is a reasonable exercise of the police power in the interest of the general welfare.

*Trinity River Auth.*, 889 S.W.2d at 262 (quoting *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951, 955 (1955)).

The question of whether the legislatively created remedy is a reasonable alternative is best decided by viewing in the aggregate the remedies the Act provides. *Garcia*, 893 S.W.2d at 523. However, for each remedy or item of damage existing under the common-law, there is no

requirement that such item be duplicated under the Act. *Id.* Instead, the bulk of remedies under the Act must be of such significance that a court is justified in viewing this legislation on the whole as a substitute, the benefits from which are sufficient to tolerate the removal of the common-law cause of action. *Id.*

As we have said, the Act is premised on a quid pro quo. *See id.*;. *Razor Enters.*, 70 S.W.3d at 277. In *Razor Enterprises*, this court interpreted the Act as offering two separate quid pro quos—one to employees and one to employers. 70 S.W.3d at 277. Under the Act, the injured employee surrenders his right to sue his employer in exchange for a guaranteed limited recovery for his injuries, regardless of whether he can prove his employer's negligence and disprove his own negligence in court. *Id.* At the same time, the Act offers employers a separate quid pro quo. *Id.* "An employer may purchase workers' compensation insurance, immunizing itself from liability for workplace negligence, but at the price of paying insurance premiums to benefit all injured employees, regardless of whose negligence caused the injury." *Id.* The Act also allows a premises owner/general contractor to extend its immunity to bar suits by the employees of subcontractors. *See* TEX. LAB. CODE § 406.123(a). "An employer choosing to opt out of the workers' compensation system remains vulnerable to litigation brought by injured employees, and during such litigation, employers are barred from asserting the defenses based on the employee's negligence or assumption of risk." *Razor Enters.*, 70 S.W.3d at 277. The Texas Supreme Court "believe[ed] this quid pro quo, which produces a more limited but more certain recovery, renders the Act an adequate substitute for purposes of the open courts guarantee." *Garcia*, 893 S.W.2d at 521.

Where a general contractor has purchased workers' compensation insurance to cover its own employees and its deemed employees, whether by virtue of a single policy or separate

policies, we believe the general contractor has immunized itself from liability for workplace negligence, at the price of paying insurance premiums to benefit all employees injured at its work site, regardless of whose negligence caused the injury and regardless of whether its own employee or a deemed employee. In exchange, all employees covered by workers' compensation insurance supplied by the general contractor forfeit their right to bring common-law claims against the employer (deemed or otherwise) and against co-employees (deemed or otherwise). Accordingly, Garza's benefit or "quid" is two-fold: he may claim workers' compensation benefits from DuPont without proof of negligence and he is shielded from common-law claims that may be brought against him by the employees of a subcontractor. Likewise, his "quo" is two-fold: he forfeits his right to bring common-law tort claims against DuPont and he forfeits his right to bring common-law tort claims against his co-employees (deemed or otherwise).

Garza contends his being shielded from common-law claims that may be brought against him by the employees of a subcontractor is not a substantial enough benefit. However, an "Open Courts analysis is not quite this myopic; focusing solely on [Garza's] lost right to sue ignores the broader societal concerns that spurred the Legislature to act." *Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010) (considering open courts challenge to ten-year statute of repose to bring a health care liability claim brought by claimant who experienced abdominal pain from surgical sponge left inside her eleven years earlier).

"The effect of the Act upon the rights of employees cannot be properly weighed or determined without a due consideration of its aim and policy in their interest." *Middleton v. Tex. Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 560 (1916). The Act, as a plan of compensation for injuries suffered in the course of employment, is more advantageous than a suit for damages.

*Id.* "In the latter, the employee is compelled to assume the burden of establishing that his injury was caused by the employer's negligence or the negligence of a servant for which the employer is responsible." *Id.* His suit fails if it is subject to any of the common law defenses. *Id.* However, under the Act, a fixed compensation is payable to him upon the mere happening of any injury in the course of the employment without reference to any negligence on the part of the employer or his servants, and without regard to defenses available to the employer at common law. *Id.* "With this as the evident spirit and design of the Act in the employee's interest, his entering the service of an employer who in his business pursuit is governed by the Act, or his remaining, after notice duly given, in the service of an employer who has adopted its plan of compensation and become subject to it, is made to operate as a waiver of any [common-law] cause of action against the employer [or fellow employee] on account of any injury suffered in the course of the employment . . . ." *Id.* "Therefore in denying the employee of a subscribing employer, or his beneficiaries, any cause of action for accidental injuries, this Act simply changes the common law rule of liability upon the subject. It in effect declares that such employers shall no longer be liable as under that rule, but shall be liable according to the rule prescribed by the Act." *Id.* at 561.

For these reasons, we conclude the restriction on Garza's right to bring common-law tort claims against Zachry and its employees is not unreasonable or arbitrary. The workers' compensation benefits he receives from his employer, which also provides those same benefits to its subcontractors, is an adequate substitute for his right to bring his tort claims against those subcontractors. Therefore, we believe Garza's rights under the Texas Constitution's open courts provision are not violated.

## CONCLUSION

We overrule Garza's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice