In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00295-CV
_____

BECON CONSTRUCTION COMPANY, INC. AND BECHTEL
EQUIPMENT OPERATIONS, INC., Appellants

V.

JOSE ALONSO, MIGUEL BETANCOURT, JOSE RODRIGUEZ, LUIS
GUAJARDO, ALEJANDRO SALINAS, AND RICARDO SALINAS JR.,
Appellees

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-190,853

**OPINION**

In this permissive appeal, we address whether the exclusive remedy defense provided by the Texas Workers' Compensation Act applies on a worksite that was subject to a contractor-controlled insurance program. *See* Tex. Lab. Code Ann. §§ 406.123, 408.001 (West 2006). Because the summary-judgment proof of the appellants, who were subcontractors on the site, established that they were entitled

1

to rely on the exclusive remedy defense, the appellants' joint motion for summary judgment should not have been denied. The trial court also erred by granting the appellees' no-evidence cross-motion for summary judgment, which asserted that the appellants could not rely on the exclusive remedy defense because they provided the trial court with no evidence to show that the general workplace insurance plan in which the appellants were enrolled complied with several Texas Department of Insurance regulations that apply to such plans. We grant the appellants' joint motion for summary judgment, we deny the appellees' no-evidence cross-motion for summary judgment, and we order that the appellees take nothing on their claims against the appellants.

Background

In January 2011, Jose Alonso, Miguel Betancourt, Jose Rodriguez, Luis Guajardo, Alejandro Salinas, and Ricardo Salinas Jr. (the employees and appellees) were on a scaffold working at a refinery on a project that involved work that other contractors and subcontractors were performing when a crane collapsed. All of the appellees who are parties to this suit, except Luis Guajardo, were employees of A&L Industrial Services, Inc. when the incident occurred; Luis was employed by Empire Scaffold, LLC. Initially, the employees sued Motiva Enterprises LLC and

Becon Construction Company, Inc.; later, they sued Bechtel Equipment Operations, Inc. in the same suit.

When the crane collapsed, A&L Industrial and Empire Scaffold were subcontractors on Motiva's project. Both were subcontractors to Performance Contractors, Inc., and Performance was working on the project under a contract with Motiva. The Motiva/Performance contract obligated Performance to provide labor and equipment on the project and required Performance to take directions on the project from the Bechtel-Jacobs Joint Venture. The various contracts in evidence reflect that the Bechtel-Jacobs Joint Venture was the contractor placed in charge of managing the overall project.

The various contracts on the project also included clauses requiring the various contractors and subcontractors to have various types of insurance for the project, including a workers' compensation policy that covered their respective employees while they worked on the project. The parties to the prime contract on the project were Motiva, Jacobs Engineering Group Inc., and Bechtel Corporation. The contract, with respect to the provisions that concern insurance for the project, required the Bechtel-Jacobs Joint Venture, the project's general contractor, to "bring into effect a Contractor Controlled Insurance Program[.]" With respect to the workers' compensation coverage for the project, the program for the project

3

obligated the Bechtel-Jacobs Joint Venture to obtain a policy covering all of the contractors and subcontractors who were to work on the project.[1]

The parties do not dispute that when the collapse occurred, Becon Construction and Bechtel Equipment (the subcontractors) were providing either construction equipment or services for the project under their respective subcontracts. Under their respective subcontracts with Performance, A&L Industrial and Empire Scaffold were not obligated to take direction on their work from the Bechtel-Jacobs Joint Venture; they were under contract to Performance. But, they were indirectly required to take direction from the Bechtel-Jacobs Joint Venture, as Performance's contract with Motiva required that Performance take direction on its work from the Bechtel-Jacobs Joint Venture.

There is also no dispute that Becon Construction and Bechtel Equipment were named as insureds on the workers' compensation policy obtained for the project by the Bechtel-Jacobs Joint Venture. The summary-judgment evidence included various insurance policy endorsements and schedules, and these indicate

---

[1]The contract contains an exception to the single-policy-for-the-project requirement, and allowed the contractors and subcontractors, by express agreement, to be excluded from the contract requirement that they enroll in the general workplace insurance plan. With respect to A&L Industrial and Empire Scaffold, the employers of the appellees, there was no summary-judgment evidence indicating that they had express agreements that excluded them from the requirement to enroll in the general workplace insurance plan created for the project.

4

that the Bechtel-Jacobs Joint Venture, Becon Construction, Bechtel Equipment, Performance, A&L Industrial, and Empire Scaffold, as well as numerous other entities not subject to the appeal, were named as additional insureds on the workers' compensation policy that the Bechtel-Jacobs Joint Venture procured for the project. In the Motiva/Performance contract, Performance and its subcontractors were required to enroll as insureds in the general workplace insurance plan created for the project.

The employees who sued were injured when a crane owned by Bechtel Equipment and operated by Becon Construction collapsed. The employees who sued were present and were working on the project because their respective employers, A&L Industrial and Empire Scaffold, had contracts with Performance. The employees of Empire Scaffold and A&L Industrial who sued collected compensation benefits under the workers' compensation policy obtained under the requirements obligating the Bechtel-Jacobs Joint Venture to procure the insurance coverage for the contractors and subcontractors who were to work on the project.

The Parties' Arguments

Arguing that the Act's exclusive remedy provision limited the employees to their compensation benefits and precluded them from bringing their common law damage claims, Becon Construction and Bechtel Equipment moved for summary

5

judgment on all of the claims of the employees that sued them. *See* Tex. R. Civ. P. 166a(c). In their appeal, Becon Construction and Bechtel Equipment contend the trial court erred by not granting their joint motion for summary judgment, and they argue the trial court should have rendered a take-nothing judgment in their favor on the employees' claims.

In response to Becon Construction's and Bechtel Equipment's joint motion for summary judgment, the employees filed a combined response and no-evidence motion for summary judgment. *See generally* Tex. R. Civ. P. 166a(i) (allowing a party to move for summary judgment on the ground that there is no evidence to support specified essential elements of the other party's claims). In their response and cross-motion, the employees argue that A&L Industrial and Empire Scaffold were performing their work under their master contracts with Performance; that the master contracts predate the Motiva/Performance contract and their subcontracts; and that the terms of their master contracts, which also included workers' compensation requirements, control the legal relationship with respect to who was required to provide a compensation policy for their employers. The employees conclude that the insurance provisions found in their master contracts with Performance take precedence over the insurance requirements found in the Motiva/Performance contract. Additionally, the employees' response and cross-

motion argues that the general workplace insurance plan created for Motiva's project failed to comply with several regulations of the Texas Department of Insurance that apply to such plans. Specifically, the employees note in their response that the contracts governing the general workplace insurance plan on Motiva's project did not provide that the Bechtel-Jacobs Joint Venture was to continue to provide compensation coverage if the general workplace insurance plan were to be terminated, and they argue that the Bechtel-Jacobs Joint Venture failed to provide the Texas Department of Insurance with the estimated number of employees affected by the general workplace insurance plan.

The trial court denied Becon Construction's and Bechtel Equipment's joint motion, and it granted the no-evidence motion filed by the employees. The trial court's order on the parties' respective motions included a provision that gave Becon Construction and Bechtel Equipment the opportunity to have its rulings reviewed in an interlocutory appeal. After the trial court granted the appellants the right to pursue an interlocutory appeal from its order on these motions, we agreed to hear the appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West Supp. 2014); *see also* Tex. R. App. P. 28.3.

7

## Standard of Review

We review a trial court's ruling on a motion for summary judgment using a de novo standard of review. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). With respect to their joint motion, Becon Construction and Bechtel Equipment were required to show that no genuine issue of material fact existed, and to show that they were entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *see also Knott*, 128 S.W.3d at 216. On appeal, we review the summary-judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Becon Construction and Bechtel Equipment also appeal from the trial court's ruling on the employees' no-evidence motion for summary judgment. "A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

The standards under Rule 166a(i) of the Texas Rules of Civil Procedure govern trial courts in resolving no-evidence motions. *See* Tex. R. Civ. P. 166a(i). To prevail on a no-evidence summary-judgment motion, a movant must establish

8

that there is no evidence of one or more essential elements of the adverse party's cause of action or affirmative defense. *Id.*; *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). To defeat the motion, the nonmovant must present evidence raising a genuine issue of material fact as to each of the elements challenged by the moving party's no-evidence motion. *Id*. In responding to a no-evidence motion for summary judgment, the nonmovant must produce more than a scintilla of evidence to avoid summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A no-evidence motion may be granted only when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L. Rev. 361, 362-63 (1960)). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994) (citing William Powers, Jr. & Jack Ratliff, *Another*

*Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L. Rev. 515, 522, 523 (1991)).

In this case, the parties' dispute concerns whether the Act's exclusive remedy defense provides Becon Construction and Bechtel Equipment a defense to the employees' common law injury claims. The resolution of the parties' arguments on that question requires that we construe the Act. On appeal, a trial court's interpretation of a statute is reviewed as a question of law, using a de novo standard. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). After construing the statute, we determine whether the trial court properly resolved the respective motions. *See Rose v. Ben C. Hebert Heirs*, 305 S.W.3d 874, 878 (Tex. App.—Beaumont 2010, no pet.).

The trial court's resolution of the motions also required the trial court to construe the various contracts in evidence and to decide whether the parties intended to require A&L Industrial and Empire Scaffold to be governed by the insurance procured to establish the general workplace insurance plan or by the insurance required by the master service agreements that their employers had with Performance. Unambiguous written instruments are construed by courts, as matters of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as

a whole in light of the circumstances present when the contract was entered." *Id.* at 394. To determine the parties' intent under a contract, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If a court properly concludes that a relevant contract term is ambiguous, the court should deny a request for summary judgment "because the interpretation of the instrument becomes a fact issue." *Coker*, 650 S.W.2d at 394.

Analysis

The exclusive remedies provision of the Act states: "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a). Section 406.123 of the Act allows general contractors and subcontractors to enter into written agreements "under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *See id.* § 406.123(a). When such an agreement is made, it "makes the general contractor the employer of the subcontractor and the subcontractor's

11

employees only for purposes of the workers' compensation laws of this state." *Id.* § 406.123(e).

According to the employees, the exclusive remedy defense does not apply because Performance and the respective subcontractors for whom they were working did not have written agreements that required Performance to provide them with the workers' compensation insurance coverage on the project at issue. The employees note that Performance, their general contractor for the project, was not required to obtain the compensation policy for the project on which they were injured; they conclude that because Performance did not obtain the policy, the provisions in the Act that relate to general workplace insurance plans did not apply to the project. They further note that their respective employers were required under their master service agreements with Performance to provide a compensation policy for the work done by Empire Scaffold and A&L Industrial, which agreements predate the Motiva project.

The employees' argument that the Act does not extend to the subcontractors they sued relies on language in *Entergy Gulf States, Inc. v. Summers. See* 282 S.W.3d 433, 436 (Tex. 2009). *Summers*, however, involved a worksite where the issue was whether the premises owner, Entergy, could utilize the exclusive remedy defense because it was not the general contractor on the project. *Id.* at 435-36. The

Texas Supreme Court decided that even though Entergy was the premises owner, it could nevertheless rely on the exclusive remedy defense provided by the Act under the general worksite insurance plan that was created for that project. *Id*. at 444-45. With respect to the Motiva project, however, the question is not whether Motiva can benefit from the general workplace insurance plan. The question before us is whether various tiers of subcontractors are entitled to rely on the exclusive remedy defense given the structure of the contractual relationships that were created for the Motiva project. Here, the defendants seeking to rely on the exclusive remedy defense were subcontractors who were working on the Motiva project along with the employers of the employees who sued; thus, the case now before us involves tiers of relationships that were not present on Entergy's project.

Nevertheless, the Texas Supreme Court's decision in *Summers* is instructive. *Id*. In concluding that Entergy could raise the exclusive remedy defense as a bar to the common law claims of the employees that sued it, the Texas Supreme Court interpreted the Act "in the context of a policy that *encourages* the provision of workers' compensation coverage to all workers on a given work site[.]" *Id.* at 444. As recognized by another case decided by the Texas Supreme Court after it decided *Summers*, "[a] general workplace insurance plan that binds a general contractor to provide workers' compensation insurance for its subcontractors and

13

its subcontractors' employees achieves the Legislature's objective" with respect to worksites where multitiered relationships exist. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 350, 359 (Tex. 2009). Interpreting the Act "in a way that favors blanket coverage to all workers on a site aligns more closely with the Legislature's 'decided bias' for coverage." *Id*. at 359 (citing *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140 (Tex. 2003)). Given the Texas Supreme Court's subsequent observations in *Rice* about worksites involving multiple tiers of contractors, we conclude that the employees' reliance on *Entergy* as support for their argument is misplaced.

With respect to the various contractual insurance provisions that are at issue, the contracts are not ambiguous. Collectively, the contracts contain an unambiguous expression that makes it clear that Motiva, the Bechtel-Jacobs Joint Venture, Becon Construction, Bechtel Equipment, Performance, Empire Scaffold, and A&L Industrial intended to create a general workplace insurance plan providing a single workers' compensation insurance policy covering all of their respective employees.

The prime contract between the Bechtel-Jacobs Joint Venture and Motiva required Bechtel-Jacobs to establish a contractor-controlled insurance program, creating a general workplace insurance plan for the project. Motiva's contract with

14

Performance required that Performance and its subcontractors enroll in the general workplace insurance plan created by the Bechtel-Jacobs Joint Venture. The contract between Motiva and Performance also required that Performance "take direction from . . . the MANAGING CONTRACTOR[,]" which was defined elsewhere in that same agreement as "the BECHTEL-JACOBS, JOINT VENTURE[.]"

In the trial court and on appeal, the employees also argue that the insurance provisions governing their work were not those found in Performance's contract with Motiva. Instead, the employees contend that their work on the project was governed by the master service agreements found in the respective contracts between Empire Scaffold, A&L Industrial, and Performance. The insurance provision at issue that is in both of the master service agreements provides:

> Subcontractor shall at its own expense purchase and maintain in a company or companies lawfully authorized to do business in the State of Louisiana and in companies satisfactory to Contractor, insurance coverage, as specified in this section. Such insurance shall be maintained until final payment by Owner and will protect Contractor and the Subcontractor from claims set forth below which may arise out of or result from the Subcontractor's operations under the Contract and for which the Contractor may be liable, whether such operations be by the Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.

The employees note that when their respective employers completed work on the Motiva project, each signed work release orders referencing the respective

15

master service agreements as the controlling contract. The employees conclude that the insurance provisions in the master service agreements controlled the insurance requirements for their employers' work on Motiva's project. They contend that the master service agreements required their respective employers to purchase the compensation coverage that covered them at the time of the incident, and they conclude that as a result, they were not—at the time they were injured—subject to the insurance requirements of the general workplace insurance plan that the Bechtel-Jacobs Joint Venture established for the project.

Even if we were to accept that Empire Scaffold and A&L Industrial were performing their work on the project under the terms of their master service agreements, we are not persuaded that the insurance provisions in the master service agreements prevented Empire Scaffold and A&L Industrial from complying with their respective contracts with Performance by enrolling their employees in the general workplace insurance plan that the Bechtel-Jacobs Joint Venture established on the project. In this case, it was undisputed that Empire Scaffold's and A&L Industrial's employees were enrolled in the general workplace plan created for the project.

While the respective master service agreements required that Empire Scaffold and A&L Industrial purchase workers' compensation coverage covering

16

their work, the summary-judgment evidence conclusively established that Empire Scaffold and A&L Industrial adjusted their contract prices for the Motiva project to account for the fact that the insurance on Motiva's project was to be provided through a general workplace insurance plan. The purchase provision in the respective master agreements requiring Empire Scaffold and A&L Industrial to purchase the coverage, under the circumstances, amounts merely to an accounting matter. By adjusting the prices they charged for their work they were being hired to perform, Empire Scaffold and A&L Industrial effectively purchased the coverage for their work on Motiva's project under the terms of the master service agreements they had with Performance. That various insurance provisions are found in the various contracts in this case did not create a material dispute of fact regarding whether Empire Scaffold and A&L Industrial intended their employees to be covered while working on the Motiva project under the general workplace insurance plan.

With respect to the work the employees were doing at the time the crane collapsed, we conclude that the summary-judgment evidence conclusively establishes that A&L Industrial and Empire Scaffold were enrolled in the general workplace insurance plan established on the Motiva project. We further conclude that the summary-judgment evidence conclusively establishes that the employees

collected workers' compensation benefits through the general workplace insurance plan.

The question not yet answered, however, is whether the exclusive remedy defense was intended to benefit all tiers of subcontractors on a project governed by a general workplace insurance plan. With respect to that question, the Act provides that the exclusive remedy defense applies not only to the employer but the employer's agents. Tex. Lab. Code Ann. § 408.001. Additionally, the Act provides a broad definition of who may qualify as a "general contractor" by defining the term to include "a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors." *Id*. § 406.121(1) (West 2006). The Act has been interpreted to allow a premise owner to enter into an agreement that allowed it to benefit from the exclusive remedy defense of the Act, reasoning that a premise owner may qualify to be a general contractor as defined by the Act. *Summers*, 282 S.W.3d at 444; Tex. Lab. Code Ann. § 406.123(a).

Addressing whether the exclusive remedy defense applies throughout all tiers of contractors at a worksite governed by a general workplace insurance plan, two of our sister courts have concluded that the defense is available. In a case that involved a worksite arrangement similar but not identical to the one at issue here,

18

the First Court of Appeals explained that where general workplace insurance plans exist, "the purposes of the Act are best served by deeming immune from suit all subcontractors and lower tier subcontractors who are collectively covered by workers' compensation insurance." *Etie v. Walsh & Albert Co., Ltd.*, 135 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). In *Etie*, the First Court concluded that the deemed employment relationship extends throughout all tiers of subcontractors. *Id*. Similarly, the San Antonio Court of Appeals has stated that for sites governed by general workplace insurance plans, all of the employees covered by the compensation plan for the site are treated as "'fellow employees'" for the purposes of the Act. *See Garza v. Zachry Constr. Corp.*, 373 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied).

We agree with Bechtel Equipment and Becon Construction that the various contracts governing the Motiva project qualified Bechtel Equipment and Becon Construction for the defense the Legislature gave employers against common law damage claims under the Act. *See* Tex. Lab. Code Ann. §§ 406.121(1), 406.123, 408.001. The various contracts effectively made Becon Construction and Bechtel Equipment agents of the Bechtel-Jacobs Joint Venture for purposes of compensation coverage; consequently, both Becon Construction and Bechtel Equipment were entitled to rely on the exclusive remedy defense against the claims

19

of the employees who sued them. Because they were participating subcontractors on a site utilizing a general workplace insurance plan authorized by the Act, we hold that Becon Construction and Bechtel Equipment are entitled to assert the exclusive remedy defense to the same extent that the defense could have been asserted by the Bechtel-Jacobs Joint Venture. *See id*. § 408.001(a).

In the trial court and on appeal, the employees also argue that the exclusive remedy defense does not apply because the summary-judgment evidence showed that the general workplace plan did not comply with certain administrative rules for such plans promulgated by the Texas Department of Insurance. According to the employees, the general workplace plan on Motiva's project failed to comply with administrative rules governing such plans because it fails to state that the subcontractor and the subcontractor's employees are employees of the general contractor for the sole purpose of workers' compensation coverage, and fails to state the estimated number of workers that are affected by the agreement. *See* 28 Tex. Admin. Code § 112.101 (2014) (Tex. Dep't of Ins., Div. of Workers' Comp., Scope of Liab. for Comp.). Because the general workplace insurance plan on Motiva's project violated these administrative rules, the employees contend that Becon Construction and Bechtel Equipment cannot rely on the Act's exclusive remedy defense. In their brief, Becon Construction and Bechtel Equipment argue

20

that the Department's administrative regulations are directory, not mandatory, and that the Department did not create an administrative penalty stripping entities of the exclusive remedy defense provided by the Legislature in the Act for violations of these specific regulations.

Neither the Act nor the regulations governing contractor-controlled insurance programs in the Administrative Code describe the penalty for violating the administrative rules at issue. *See* Tex. Lab. Code Ann. §§ 406.123, 408.001; 28 Tex. Admin. Code § 112.101(a)(2), (a)(6). Given the Legislature's "decided bias in favor of employers electing to provide coverage" through a policy "that *encourages* the provision of workers' compensation coverage to all workers on a given work site," the Act should not be interpreted in the manner the employees argue. The employees' interpretation would discourage contractors from becoming involved in worksites governed by general workplace insurance plans and might prevent some employees who would otherwise be covered by insurance from being covered under these types of policies due to the violation of regulations, as it does not appear that the Legislature intended for these types of violations to strip employers of defenses or to cause employees to lose the benefits of their coverage. *See Summers*, 282 S.W.3d at 444; *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140 (Tex. 2003). We conclude that the proper penalty for the violations raised by

the employees is a matter that should be left to the Texas Department of Insurance. *See* Tex. Lab. Code Ann. § 408.001(a).

The employees also contend that Becon Construction and Bechtel Equipment failed to conclusively establish that the contracts governing the general workplace insurance plan required the Bechtel-Jacobs Joint Venture to continue to provide compensation coverage if the plan were to be terminated. The employees argue that a possibility exists under the contracts at issue that the insurance coverage on the project could be discontinued. However, nothing in the summary-judgment evidence shows that the compensation carrier that is obligated to pay the employees their compensation benefits has a right to terminate its obligation to pay these employees benefits if the general workplace insurance plan were to be discontinued. There is also no evidence showing that the Bechtel-Jacobs Joint Venture retained the right to terminate its obligation to pay premiums on the coverages put in place on Motiva's project.

Regardless of what might or might not happen in the future, evaluating whether a general workplace insurance plan provides a defendant with an exclusive remedy defense requires that courts "look at what did happen, not what might happen." *HCBeck*, 284 S.W.3d at 359 n.4. In this case, conclusive summary-judgment evidence shows that the employees collected compensation benefits

22

under coverage put in place based on the general workplace insurance plan established by the Bechtel-Jacobs Joint Venture for Motiva's project.

## Conclusion

We hold that the summary-judgment evidence conclusively establishes that the exclusive remedy defense of the Act applied to all of the claims made by the employees who sued. *See* Tex. Lab. Code Ann. §§ 406.123, 408.001. We hold the trial court erred by granting the employees' no-evidence motion for summary judgment and by denying Becon Construction's and Bechtel Equipment's joint motion for summary judgment. We reverse the trial court's order.

Under the Rules of Appellate Procedure, we must then render the judgment the trial court should have rendered on the motions that are the subject of the appeal. Tex. R. App. P. 43.2(c). Therefore, we grant Becon Construction's and Bechtel Equipment's joint motion for summary judgment, and we deny the employees' no-evidence motion for summary judgment. We further order that Jose Alonso, Miguel Betancourt, Jose Rodriguez, Luis Guajardo, Alejandro Salinas, and Ricardo Salinas Jr. recover nothing on all of their claims against Becon

Construction and Bechtel Equipment, as these are the rulings the trial court should have rendered.[2]

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on April 24, 2014
Opinion Delivered September 25, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.

_____

[2]This permissive appeal concerns the employees' negligence claims against Becon Construction and Bechtel Equipment, and is not intended to dispose of any claims they may have against any other defendant they have sued. *See* Tex. R. App. P. 28.3.