ACCEPTED
03-15-00529-CV
8127888
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/8/2015 8:29:43 AM
JEFFREY D. KYLE
CLERK

Case No. 03-15-00529-CV

COURT OF APPEALS
THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/8/2015 8:29:43 AM
JEFFREY D. KYLE
Clerk

MATTHEW ERIC KERSHNER,

*Appellant*

v.

SAMSUNG AUSTIN SEMICONDUCTOR, LLC,

*Appellee.*

*On Appeal from Cause No. D-1-GN-12-003687
53rd Judicial District Court of Travis County, Texas
Hon. Gisela D. Triana, Presiding*

**APPELLEE'S BRIEF**

**BRET A. SANDERS**
State Bar No. 24033152
**JEFFREY D. BOYD**
State Bar No. 24069404
**FEE, SMITH, SHARP & VITULLO, L.L.P.**
1801 South MoPac Expressway
Suite 320
Austin, TX 78746
(512) 479-8400
(512) 479-8402 (Fax)
bsanders@feesmith.com
jboyd@feesmith.com
**COUNSEL FOR APPELLEE**

## IDENTITY OF PARTIES AND COUNSEL

| Parties | Counsel |
|---|---|
| Matthew Eric Kershner<br>*Appellant* | Matthew J. Kita<br>P.O. Box 5119<br>Dallas, Texas 75208<br>*Appellate and Trial Counsel* |
| | Robert W. Lee<br>Lee Gober & Reyna<br>11940 Jollyville Road, Suite 220-S<br>Austin, Texas 78759<br>*Trial Counsel* |
| Samsung Austin Semiconductor, LLC<br>*Appellee* | Bret A. Sanders<br>Jeffrey D. Boyd<br>Fee, Smith, Sharp & Vitullo, LLP<br>1801 South MoPac Expressway, Suite 320<br>Austin, Texas 78746<br>*Appellate and Trial Counsel* |

# TABLE OF CONTENTS

Identity of Parties and Counsel ......................................................................... ii

Index of Authorities ......................................................................................... v

Statement of the Case...................................................................................... vii

Statement Regarding Oral Argument.............................................................. viii

Issues Presented ............................................................................................... ix

Statement of Facts ..............................................................................................1

Summary of the Argument..................................................................................4

Argument............................................................................................................5

I.      Appellant Concedes that Appellee Has Shown the Applicability of Texas Labor Code Section 406.123 as a Matter of Law, Confirming that Appellee is Entitled to Summary Judgment.................................................................5

II.     Section 406.122 Does Not Apply to This Case and Therefore Cannot Defeat Summary Judgment ................................................................................6

        A.      Section 406.122's Requirements are Not Met ....................................6

        B.      Spur Agreed to Section 406.123 Being the Applicable Authority........7

        C.      *TIC Energy* is Not Binding Authority and Conflicts with Precedent ...8

        D.      *TIC Energy* is Not Applicable Under Its Own Terms...........................8

        E.      This Court Has Previously Considered and Rejected Appellant's Argument.........................................................................................10

        F.      Appellant Continues to Fail to Respond to Appellee's Arguments....13

III.    Appellant's Argument Puts OCIP Policies in Texas at Risk........................13

Conclusion and Prayer ...............................................................................17

Certificate of Compliance .........................................................................18

Certificate of Service................................................................................18

Appendix ...................................................................................................19

## Cases

*Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009)....................5, 15

*HCBeck, Ltd. v. Rice*, 284 S.W.3d 349 (Tex. 2009) ......................................... 14–16

*Walker v. Harris*, 924 S.W.2d 375 (Tex. 1996)...............................................10

*Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134 (Tex. 2003)...................... 14–15

*Bedrock General Contractors, Inc. v. Texas Workers' Compensation Insurance Fund*, No. 03-00-00426-CV, 2001 WL 253594 (Tex. App.—Austin Mar. 8, 2001, pet. denied) (not designated for publication) ...................................................... 11–13

*Brooks v. Goodyear Tire & Rubber Co.*, No. 14-12-01048-CV, 2013 WL 3477288 (Tex. App.—Houston [14th Dist.] Jul. 9, 2013, no pet.) ................................... 15–16

*Cook v. White Construction Co.*, No. 03-10-00114-CV, 2011 WL 3371542 (Tex. App.—Austin Aug. 4, 2011, no pet.)................................................................15

*Funes v. Eldridge Electric Co.*, 270 S.W.3d 666 (Tex. App.—San Antonio 2008, no pet.)..........................................................................................................15

*Garza v. Zachry Construction Corp.*, 373 S.W.3d 715 (Tex. App.—San Antonio 2012, pet. denied)........................................................................................ 15–16

*Hunt Construction Group, Inc. v. Konecny*, 290 S.W.2d 238 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).............................................................................15

*Lazo v. Exxon Mobil Corp.*, No. 14-06-00644-CV, 2009 WL 1311801 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.) ..............................15

*Salinas v. Pankratz*, No. 13-10-00241-CV, 2012 WL 112812 (Tex. App.—Corpus Christi Jan. 12, 2012, no pet.) .........................................................................15

*TIC Energy and Chemical, Inc. v. Martin*, No. 13-14-00278-CV, 2015 WL 127777 (Tex. App.—Corpus Christi Jan. 8, 2015, pet. filed) (mem. op.)................. 8–10, 13

## Statutes and Rules

Texas Labor Code § 406.122 ................................................................ 4–14, 17

Texas Labor Code § 406.123 ................................................................ 4–9, 13, 17

Texas Labor Code § 408.001 ................................................................ 5, 14

Texas Rule of Appellate Procedure 38.1 ................................................................ 5

Texas Rule of Appellate Procedure 47.7 ................................................................ 11

## STATEMENT OF THE CASE

**Nature of the Case:** Appellant sued Appellee for monetary damages in premises liability, claiming personal injuries from an alleged on-the-job injury. C.R. 3–12. Appellee denied Appellant's allegations. C.R. 13–17.

**Course of Proceedings:** Appellee moved for summary judgment based on the workers compensation bar. *E.g.*, C.R. 18–32.

**Trial Court's Disposition:** The trial court granted Appellee's motion for summary judgment. C.R. 221.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a clear application of the workers compensation bar in a fact scenario where Texas courts have applied it many times before. Appellant's incorrect argument for the application of a statute whose requirements are not triggered has previously been considered and rejected by this Court. Appellee therefore respectfully submits that oral argument is not needed in this matter, though Appellee will be pleased to present argument if the Court believes it will be of assistance.

## ISSUES PRESENTED

1. Can Appellee successfully argue for reversal of summary judgment despite it being undisputed that the requirements for summary judgment under the applicable statute have been met as a matter of law?

2. Can Appellee successfully argue for reversal of summary judgment by asking the Court to apply a statute and case law whose requirements are not met as a matter of law?

Appellant was the direct employee of Spur Electric, Inc. ("Spur") while working on the Saturn Project for Appellee Samsung Austin Semiconductor, LLC ("SAS"). *See, e.g.*, C.R. at 37–38, 45–46. Appellant claims he injured himself in a fall while performing work on that project. C.R. 4–5.

SAS implemented an Owner Controlled Insurance Program ("OCIP") to provide workers' compensation coverage for contractors of every tier providing labor to the Saturn Project. C.R. 63, 85–87, 89–90, 154–55. Participation in the OCIP was mandatory, and all contractors and subcontractors were required to follow enrollment procedures. C.R. 63, 85–87, 89–90. Subcontractors contracting their own subcontractors were required to include the OCIP instructions with bid documentation and require that any of their own subcontractors participate in the OCIP. C.R. 70, 85–87, 89–90. Any independent workers compensation policy held by the subcontractor was explicitly stated to "only be Excess . . . of the OCIP coverages." C.R. 68, 85–87, 89–90. SAS was responsible for the payment of all OCIP premiums. C.R. 70, 85–87, 89–90. Subcontractors enrolled in the OCIP were to be provided a Certificate of Insurance. C.R. 63, 85–87, 89–90.

Spur subcontracted with Durr Systems, Inc. ("Durr"), a contractor on the Saturn Project, for electrical install. *See* C.R. 89–90, 154–55. In its proposal to Durr, Spur acknowledged it would be participating in the OCIP and stated it had

included all requirements for participation in the OCIP. C.R. 73–74, 85–87, 89–90. Durr informed SAS of Spur's subcontract on a form entitled "Samsung Austin Semiconductor Saturn Project Notice of Subcontract Award and *Request for Insurance*". C.R. 76 (emphasis added), 85–87; *see* C.R. 89–90. The form was copied to the attention of the "OCIP Administrator". C.R. 76, 85–87, 89–90.

Further, Spur completed a "Samsung Austin Semiconductor Saturn Project Enrollment Worksheet", expressly stating that it "hereby acknowledges and agrees that worker's compensation insurance coverage is being provided to [Spur] and its employees pursuant to an Owner/Contractor Controlled Insurance Program ('CCIP' / 'OCIP')". C.R. 78, 85–87, 89–90. Spur expressly agreed that the document "serves to memorialize the parties' agreement for purposes of Texas Labor Code sec. 406.123." C.R. 78, 85–87. The form was signed by a representative of Spur on October 15, 2010. C.R. 78, 85–87; *see* C.R. 89–90. This form was also sent to the OCIP Administrator. C.R. 78, 85–87, 89–90.

Spur was issued a Certificate of Insurance showing it had enrolled in the OCIP. C.R. 80, 83, 85–87, 89–90, 92–126; *see* C.R. 154–55; C.R. 66 ("Each Enrolled Contractor will receive a separate Workers' Compensation policy."). The policy limits shown on the Certificate are identical to those workers compensation limits scheduled to be provided under the OCIP. *Compare* C.R. 80, 83 *with* C.R. 65; *see* C.R. 85–87, 89–90, 92–126.

Appellant alleges he was injured on the job on December 7, 2010. *See* C.R. 4–5. At that date, Spur was already enrolled in the OCIP, including being issued a policy number of 10 WN QV6244 under the OCIP. C.R. 80, 83, 85–87, 92–126; *see* C.R. 154–55. The coverage period includes the alleged date of injury. *See* C.R. 80, 83, 85–87, 92–126. Therefore, any claim for on-the-job injury was covered by SAS's OCIP policy worker's compensation coverage.

In summary, Appellant's direct employer Spur was required to and did enroll in the OCIP provided by SAS. The same OCIP provided coverage for Appellant's alleged on-the-job injury that is the basis of Appellant's suit. SAS moved for summary judgment on the basis that Appellant's suit against SAS was therefore barred by longstanding Texas law on workers compensation coverage. *E.g.*, C.R. 18, 24–28, 178, 183–93. The trial court granted SAS's motion for summary judgment. C.R. 221.

## SUMMARY OF THE ARGUMENT

The trial court properly granted summary judgment because SAS met all requirements for application of the workers compensation bar under Texas Labor Code section 406.123. Appellant argues for the application of section 406.122 to defeat summary judgment, citing to a case from another court of appeals. However, an absolute requirement of section 406.122 is not met, and Appellant's argument is therefore incorrect, according to Appellant's own favored statute and opinion as well as a prior opinion of this Court. The Court should affirm the decision of the trial court.

I.      **Appellant Concedes that Appellee Has Shown the Applicability of Texas Labor Code Section 406.123 as a Matter of Law, Confirming that Appellee is Entitled to Summary Judgment.**

Appellant's Brief argues only the applicability of Section 406.122 of the Texas Labor Code. Appellant does not dispute—and therefore concedes—that SAS has satisfied all requirements of Section 406.123 of the Texas Labor Code.[1] *E.g.,* Tex. R. App. P. 38.1(h), (i) (noting the brief must contain the arguments being made).

Appellant also does not dispute the established law that SAS's satisfaction of section 406.123 makes it a deemed employer immune from suit by deemed employees. *E.g.,* Tex. Lab. Code §§ 408.001 and 406.123; *Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 435–36, 438 (Tex. 2009).

Texas courts have repeatedly and consistently granted summary judgment under section 406.123 in this specific situation. The trial court merely agreed with and applied the existing legal authorities in granting summary judgment for SAS. Appellant's sole argument is that the Court should instead look to a separate statute.

---

1 Due to this concession, SAS will not add to the length of this Brief by detailing all the ways in which it has complied with section 406.123 as a matter of law. SAS did make this showing in its summary judgment briefing, which the trial court granted. *E.g.,* C.R. 21–23, 24–28, 188, and 189–192. If Appellant claims that SAS must make this showing despite Appellant's failure to dispute the same as an appellate issue, SAS would request the opportunity to file supplemental briefing.

## II. Section 406.122 Does Not Apply to This Case and Therefore Cannot Defeat Summary Judgment.

Appellant argues that SAS must both prove the applicability of section 406.123 and *disprove* the applicability of section 406.122 as a matter of law. Appellant does not address in any way the bevy of authority cited by SAS showing summary judgment is proper. In support of its claim, Appellant instead cites to one unpublished opinion currently pending before the Texas Supreme Court and having no binding authority on this Court. However, there are multiple reasons that Appellant's argument cannot prevail.

The language of section 406.122 makes clear it is not applicable. Appellant's direct employer agreed that section 406.123 would apply. There is no evidence of a written agreement required to make section 406.122 applicable. This Court has previously dealt with the absence of the required written agreement and agreed with SAS that Appellant's favored statute is not applicable. Finally, these issues were raised before the trial court. Appellant had actual awareness of the reasons its argument is incorrect, and it has effectively conceded those reasons by failing to address them on appeal.

### A. Section 406.122's Requirements are Not Met.

Texas Labor Code section 406.122 states that a subcontractor and its employees are *not* deemed employees of general contractor *only* if the subcontractor both:

(1) is operating as an independent contractor; and

(2) has entered into a written agreement with the general contractor that evidences a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work.

Tex. Lab. Code § 406.122(b). Appellant argues that its self-serving declaration fulfills the evidentiary requirement for operating as an independent contractor. Appellant's Brief at 7–8. However, Appellant does not present evidence of, let alone even attempt to argue the existence of, the required written agreement. In the absence of the required written agreement, it is clear that section 406.122 has no applicability to this case.

### B. Spur Agreed to Section 406.123 Being the Applicable Authority.

In contrast to the complete absence of the written agreement required to trigger section 406.122, Appellant's direct employer Spur explicitly agreed in writing to be bound by section 406.123. Spur enrolled in the OCIP provided by SAS, and its Enrollment Worksheet expressly states that it memorializes the parties' agreement for workers compensation coverage for the purposes of Texas Labor Code section 406.123. C.R. 78; *see also* C.R. 21–22, 27, and 188. In short, it was agreed that section 406.123 would govern, that SAS would be Appellant's deemed employer for purposes of the workers compensation bar, and that SAS would have immunity against Appellant through that statute.

## C.    TIC Energy *is Not Binding Authority and Conflicts with Precedent.*

Appellant relies on *TIC Energy and Chemical, Inc. v. Martin*, an opinion out of the Thirteenth Court of Appeals. No. 13-14-00278-CV, 2015 WL 127777 (Tex. App.—Corpus Christi Jan. 8, 2015, pet. filed) (mem. op.). It therefore can serve only as persuasive authority, though it is noted below why the opinion has no applicability to this case in even that capacity. Further, the status of *TIC Energy* cannot be determined. A petition for review on the opinion is currently pending before the Supreme Court. As the *TIC Energy* court acknowledges, it is the first court to reach the opinion it did. *See id.* at *4. SAS presented the trial court with a wealth of authority, all agreeing that the workers compensation bar applies when a general contractor satisfies Texas Labor Code section 406.123. C.R. 24–27. Appellant disputes none of this authority on appeal, and instead relies on a non-binding outlier opinion that may soon by overturned.

## D.    TIC Energy *is Not Applicable Under Its Own Terms.*

As noted above, Appellant's sole argument for error is that SAS must prove as a matter of law both that section 406.123 applies and section 406.122 does *not* apply, and that SAS has failed to do the latter. Appellant incorrectly interprets *TIC Energy* to make this argument. The court's opinion in that matter is much narrower. SAS pointed out Appellant's incorrectly broad interpretation before the trial court. C.R. 185–186. Appellant tellingly has not responded in any way on

appeal, indicating it cannot dispute the proper interpretation of the opinion.

The court in *TIC Energy* actually says that a general contractor must disprove section 406.122 *only* in a specific factual scenario that causes section 406.122 to "irreconcilably conflict" with section 406.123. *TIC Energy*, 2015 WL 127777 at *4. The court makes its narrow opinion explicitly clear, stating it is:

> [A]ddressing a scenario, such as the one presented here, where a subcontractor enters into *both*: (1) an agreement with a general contractor under which the general contractor agrees to provide workers' compensation coverage to the subcontractor's employees, *see* TEX. LAB. CODE ANN. § 406.123(a); *and* (2) a written agreement with the general contractor under which the subcontractor assumes the responsibilities of an employer for the performance of work. *See id.* § 406.122(a). In such a scenario, section 406.123(e) unambiguously states that the general contractor is deemed the "employer" of the subcontractor for TWCA purposes, but section 406.122(b) unambiguously states that the subcontractor is *not* deemed an "employee" of the general contractor for TWCA purposes. *See id.* §§ 406.122(b), 406.123(e).

> We therefore conclude that, as applied to these facts, the two statutes irreconcilably conflict.

*Id.* at *4 (italicized emphasis in original; underlined emphasis added). In other words, *TIC Energy* can on its face only possibly apply when *both* sections 406.122 and 406.123 are triggered.

Under its own case law, Appellant can therefore only properly argue the application of section 406.122 when it is also triggered. As noted above—and as echoed in the *TIC Energy* opinion, *id.* at *2 (quoting Tex. Lab. Code § 406.122)— section 406.122 requires a written agreement that does not exist in this matter.

Again this issue was brought to the trial court's attention by SAS. C.R. 185–186. Despite knowing of the issue, again Appellant has failed to address it on appeal, indicating it has no response. Appellant has not pointed to the required written agreement and has not argued that such an agreement exists.[2] Appellant instead cites only to and attaches only Appellant's self-serving and conclusory declaration. C.R. 167–168. Even if this was proper evidence, the declaration does not mention *any* agreement with SAS,[3] let alone a written agreement that includes the terms required for section 406.122 and *TIC Energy* to be applicable.

In summary, *TIC Energy* follows the plain language of section 406.122 in making clear that neither its opinion nor that statute is applicable in the absence of the required written agreement. As there is no evidence of such an agreement here, these authorities have no applicability to this matter.

### E. This Court Has Previously Considered and Rejected Appellant's Argument.

This Court has considered this very issue and agreed with SAS that section

---

2 Appellant incorrectly claimed before the trial court that SAS was arguing for reversing the burden on summary judgment. SAS is instead merely noting that there is no evidence of the written agreement required to trigger Appellant's favored statute, section 406.122. Appellant's argument that this reverses the burden is effectively an argument that a summary judgment movant must not only present evidence for summary judgment but must also prove the *nonexistence* of all evidence against summary judgment. There is of course no requirement for SAS to affirmatively disprove the existence of all evidence that could in any way deny it summary judgment. SAS met its burden as the movant for summary judgment, Appellant failed to respond with evidence of a fact issue, and summary judgment was properly granted. *E.g.*, *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

3 The only agreement of any kind mentioned in the declaration is with Durr. *See* C.R. 167.

406.122 is not applicable when there is no evidence of the written agreement required by the statute.

In *Bedrock General Contractors, Inc. v. Texas Workers' Compensation Insurance Fund*, appellant Bedrock General argued that its workers compensation premiums should not be calculated to include the employees of Bedrock Materials because Bedrock Materials was an independent contractor under section 406.122. No. 03-00-00426-CV, 2001 WL 253594, at \*1–\*2 (Tex. App.—Austin Mar. 8, 2001, pet. denied) (not designated for publication).[4] The Court noted that section 406.122 presumes that a subcontractor like Spur is an employee for workers compensation purposes, and therefore Appellant must overcome this presumption. *Id.* at \*2. To overcome this presumption on summary judgment, Appellant must raise a fact question meeting two conditions: "(1) [Spur] operate[d] as an independent contractor *and* (2) [Spur] enter[ed] into a written agreement with [SAS] 'evidenc[ing] a relationship in which [Spur] assumes the responsibilities of an employer for the performance of work.'" *Id.* (quoting Tex. Lab. Code § 406.122(b)) (emphasis in original). The Court concludes that section 406.122 does not apply because there was no evidence of a "written agreement between [Bedrock General] and Bedrock Materials that evidenced an independent

---

4 Due to being not designated for publication, this case does not have precedential value. Tex. R. App. P. 47.7(b). However, it has strong value as persuasive authority, as it demonstrates that the Court has considered and previously rejected Appellant's argument on one of the same grounds that it should be rejected here.

relationship." *Id.* at \*8.

In short, this Court previously made clear that a written agreement showing an independent relationship is an absolute requirement for section 406.122 to apply. This is the same argument SAS makes above, the same argument SAS made to the trial court, and the same argument Appellant continues to fail to address on appeal. Because there is no evidence of a qualifying written agreement—and Appellant does not even argue such a written agreement exists—it is clear under the Court's prior opinion that section 406.122 does not apply.

Appellant claims its evidence shows Spur was operating as an independent contractor. However, the Court also dealt with that issue in *Bedrock General* and determined that such a claim is entirely irrelevant standing alone. That is only one of multiple necessary conditions, and the manner in which Spur operates is not sufficient to satisfy section 406.122 in the absence of a written agreement. *Id.* at \*8 n.10 ("[Bedrock General] also claims that a fact issue exists with respect to whether Bedrock Materials operated as an independent contractor.[5] Because we conclude that a written agreement did not exist, we need not reach this argument.").

*Bedrock General* makes clear that the Court has considered and agrees with

---

5 Note that this is the exact argument Appellant makes. *E.g.*, Appellant's Brief at 5 ("[T]he evidence before the trial court demonstrated that Spur was operating as an independent contractor."). The Court property determined the argument was wrong when Bedrock General made it, and it remains wrong now that Appellant is making it.

SAS's position that section 406.122 and *TIC Energy* have no application to this suit because there is no evidence of a written agreement satisfying section 406.122.

### F.       *Appellant Continues to Fail to Respond to Appellee's Arguments.*

Appellant is well aware of the issues with its argument for the applicability of section 406.122 and *TIC Energy*. In briefing to the trial court, SAS pointed out that Spur agreed to be bound by section 406.123, that *TIC Energy* is an outlier opinion with no binding authority, that section 406.122 and *TIC Energy* explicitly state they are not applicable without the written agreement that does not exist here, and that this Court has considered and rejected Appellant's argument. *E.g.*, C.R. 21–22, 27, 78, 183–188. By failing to respond to any of these issues, Appellant concedes it has no response.[6]

## III.    Appellant's Argument Puts OCIP Policies in Texas at Risk.

Appellant argues that a deemed employer providing workers compensation coverage to deemed employees must also prove a negative: that section 406.122 does not apply. Appellant further argues that it is insufficient for SAS to demonstrate the complete absence of evidence of the qualifying written agreement

---

6 Bizarrely, Appellant instead incorrectly claims that "Samsung's motion for summary judgment never addressed section 406.122." Appellant's Brief at 7. Appellant presumably is aware this claim is incorrect, as SAS already addressed it before the trial court. C.R. 188; *see also* C.R. 27 & n.4. SAS did not address section 406.122 in more depth in its initial summary judgment motion because it was clearly inapplicable. Once Appellant incorrectly argued for its application, SAS briefed the issue in detail. C.R. 183–189. As noted above, it is Appellant that has failed to argue against *any* of the reasons given for why section 406.122 and *TIC Energy* do not apply here.

explicitly required by section 406.122 for that statute to be applicable. Appellant's argument puts a tremendous burden on general contractors like SAS who wish to ensure those working their projects have workers compensation coverage. In addition to the reasons given above for why Appellant's argument is incorrect, it is worth weighing the burden Appellant wishes to create against the public policy that strongly favors finding coverage.

It is well-established law that the remedy for an employee alleging an on-the-job injury is limited to the recovery of workers' compensation benefits. Tex. Lab. Code § 408.001(a). Texas courts have repeatedly noted the sound public policy behind the Legislature's decision to make workers' compensation benefit the employee's *exclusive* remedy. Under the Texas Workers' Compensation Act, employees are provided with certainty that their medical bills and lost wages will be covered if they are injured, without the time, expense, and uncertainty of litigation and without having to prove liability. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 350 (Tex. 2009); *id.* at 358 (quoting *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003)). In short, the Act guarantees that employees injured on the job are promptly covered for medical expenses regardless of fault. In return, the subscribing employer receives immunity from the tort claims of that employee. *Id.* at 350; *id.* at 358 (quoting *Wingfoot*, 111 S.W.3d at 142).

Unsurprisingly, the Legislature and Texas courts have consistently favored

finding workers compensation coverage—and the immunity that comes with it—in scenarios like the one presented here. Doing so is in keeping with the Texas Supreme Court's recognition of the Legislature's "'decided bias' *for* coverage" in determining whether the exclusive-remedy defense applies. *Id.* at 358 (quoting *Wingfoot Enters.*, 111 S.W.3d at 142) (emphasis in original). The Court has further recognized that multi-tiered contractor relationships are prevalent throughout Texas, and the bias for coverage requires favoring broad, blanket coverage and extending immunity throughout multiple tiers when workers compensation coverage is provided to employees. *Id.* at 358–59.

Courts throughout Texas have responded by routinely finding broad, multi-tiered immunity resulting from OCIP policies like the one in this case.[7] OCIP

---

7 Specific to this case, the Texas Supreme Court has explicitly held that premises owners (like SAS) have immunity from claims for personal injuries made by employees of subcontractors (like Appellant). *Summers*, 282 S.W.3d at 435–36, 438; *see also Garza v. Zachry Constr. Corp.*, 373 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied); *Salinas v. Pankratz*, No. 13-10-00241-CV, 2012 WL 112812, at *3 (Tex. App.—Corpus Christi Jan. 12, 2012, no pet.); *Lazo v. Exxon Mobil Corp.*, No.14-06-00644-CV, 2009 WL 1311801, at *2–3 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.).

As additional examples of the broad findings of coverage with OCIPs: The general contractor has immunity from an employee of a subcontractor due to an OCIP purchased by the premises owner. *HCBeck*, 284 S.W.3d at 360; *Cook v. White Constr. Co.*, No. 03-10-00114-CV, 2011 WL 3371542, at *5 (Tex. App.—Austin Aug. 4, 2011, no pet.); *Hunt Constr. Grp., Inc. v. Konecny*, 290 S.W.3d 238, 246 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). A subcontractor has immunity from an employee of the premises owner due to an OCIP purchased by the premises owner. *Garza*, 373 S.W.3d at 721. A subcontractor has immunity from an employee of another subcontractor due to an OCIP purchased by the premises owner. *Hunt Constr.*, 290 S.W.3d at 247; *Funes v. Eldridge Elec. Co.*, 270 S.W.3d 666, 672 (Tex. App.—San Antonio 2008, no pet.). A premises owner has immunity from an employee of a subcontractor, even in the absence of an OCIP, because the premises owner agreed to reimburse the subcontractor for premiums the subcontractor paid to provide workers compensation coverage to its employees. *Brooks v. Goodyear Tire & Rubber Co.*, No. 14-12-01048-CV, 2013 WL

policies "allow the highest-tiered entity to ensure quality and uninterrupted coverage to the lowest-tiered employees", thereby ensuring that all employees on a project receive the benefits contemplated by the Workers' Compensation Act. *Id.* at 359. The Texas Supreme Court has expressed concern that failing to find immunity in the case of an OCIP "would likely do away with" that insurance option in Texas. *Id.* at 360 n.7; *see Garza v. Zachry Constr. Corp.*, 373 S.W.3d 715, 723 (Tex. App.—San Antonio 2012, pet. denied).

It is undisputed that Appellant received workers compensation benefits and that those have been covered by SAS's OCIP policy. The sound public policy behind the workers compensation bar has therefore been satisfied in this case. Affirming summary judgment is also in keeping with the Legislature's decided bias for finding coverage and applying the workers compensation bar. Affirming summary judgment also avoids conflicting with the Supreme Court's concern that failing to find immunity in cases where the purposes of OCIP policy have clearly been satisfied will lead to the elimination of this insurance option in Texas. Appellant's self-serving and conclusory declaration and citations to inapplicable statutory and case law does not change the result: the bevy of evidence and authority presented makes clear that SAS was and remains entitled to summary judgment.

---

3477288, at *3–4 (Tex. App.—Houston [14th Dist.] Jul. 9, 2013, no pet.).

## CONCLUSION AND PRAYER

Appellee Samsung Austin Semiconductor, LLC is indisputably entitled to summary judgment under Texas Labor Code section 406.123 and case law interpreting that statute. Appellee incorrectly argues for the application of section 406.122, as one of its absolute requirements is clearly not met. Appellee therefore asks that the Court affirm the summary judgment entered by the trial court, and for all other relief to which Appellee has shown itself justly entitled.

Respectfully submitted,

**FEE, SMITH, SHARP & VITULLO, L.L.P.**

   /s/ Jeffrey D. Boyd
**BRET A. SANDERS**
State Bar No. 24033152
**JEFFREY D. BOYD**
State Bar No. 24069404
1801 South MoPac Expressway, Suite 320
Austin, Texas 78746
(512) 479-8400
(512) 479-8402 (Fax)
bsanders@feesmith.com
jboyd@feesmith.com

**ATTORNEYS FOR APPELLEE**

## CERTIFICATE OF COMPLIANCE

This brief complies with Texas Rule of Appellate Procedure 9.4(i) because it contains 4,056 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1). In making this certificate of compliance, I am relying on the word count provided by the software used to prepare this document.


/s/ Jeffrey D. Boyd
**BRET A. SANDERS**
**JEFFREY D. BOYD**

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that a true and correct copy of the foregoing instrument has been mailed, telecopied, emailed, or hand-delivered to all attorneys of record in this cause of action on the 8th day of December, 2015.

| *Via Certified Mail/RRR* | *Via Certified Mail/RRR* |
|---|---|
| Matthew J. Kita | Kenneth "Tray" Gober, III |
| P.O. Box 5119 | Robert W. Lee |
| Dallas, TX 75208 | Lee, Gober & Reyna |
| (214) 347-7221 (Fax) | 11940 Jollyville Road, Suite 220-S |
| matt@mattkita.com | Austin, TX 78759 |
| *Appellate and Trial Counsel for Appellant* | *Trial Counsel for Appellant* |

/s/ Jeffrey D. Boyd
**BRET A. SANDERS**
**JEFFREY D. BOYD**

## Appendix

*Bedrock General Contractors, Inc. v. Texas Workers' Compensation Insurance Fund*, No. 03-00-00426-CV, 2001 WL 253594 (Tex. App.—Austin Mar. 8, 2001, pet. denied) (not designated for publication)

*TIC Energy and Chemical, Inc. v. Martin*, No. 13-14-00278-CV, 2015 WL 127777 (Tex. App.—Corpus Christi Jan. 8, 2015, pet. filed) (mem. op.)

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

2001 WL 253594
Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR
PUBLICATION. UNDER TX R RAP
RULE 47.7, UNPUBLISHED OPINIONS
HAVE NO PRECEDENTIAL VALUE BUT
MAY BE CITED WITH THE NOTATION
"(not designated for publication)."

Court of Appeals of Texas, Austin.

BEDROCK GENERAL
CONTRACTORS, INC., Appellant,
v.
TEXAS WORKERS' COMPENSATION
INSURANCE FUND, Appellee.

No. 03-00-00426-CV.  |  March 8, 2001.

From the District Court of Travis County, 261st
Judicial District, No. 97-08588; Mary Pearl Williams,
Judge Presiding.

Before ABOUSSIE, Chief J., YEAKEL and
PATTERSON, JJ.

## Opinion

PATTERSON.

*1 Appellee Texas Workers' Compensation
Insurance Fund ("the Fund") sued appellant Bedrock
General Contractors, Inc. ("Bedrock General")
to recover premiums due under three workers'
compensation insurance policies issued by the Fund
to Bedrock General in 1994, 1995, and 1996.[1] The
district court granted partial summary judgment in
favor of the Fund and found Bedrock General liable
for additional premiums claimed by the Fund under
its insurance policies .[2] Appellant now challenges the
district court's judgment. Because the Fund established
its entitlement to summary judgment and appellant
failed to raise a genuine issue of material fact, we
affirm the district court's judgment.

[1]     The Fund also sued Bedrock Materials, Inc.,
        Wesco Construction, Inc., and Equipment
        Express, Inc. This appeal arises from a partial

summary judgment that the Fund obtained
against Bedrock General.

[2]     We have jurisdiction over this interlocutory
        order, which the district court severed for
        purposes of appeal. See Mafrige v. Ross, 866
        S.W.2d 590, 591 (Tex.1993); Pan Am. Petroleum
        Corp. v. Texas Pac. Coal & Oil Co., 159 Tex.
        550, 324 S.W.2d 200, 200-01 (Tex.1959).

### Background

Jack Adcox and William Speer first met in the late
1980s during a business deal. At the time, Speer owned
Wesco Construction, Inc., a business created to build
subdivisions and perform construction work. In April
1990, Adcox and Speer formed Bedrock Materials,
Inc. ("Bedrock Materials") for the purpose of selling
sand and calcium sulfate. Adcox primarily handled
the sales and administrative duties in the office while
Speer concentrated on overseeing work at job sites in
the field.

Adcox and Speer agreed orally that while Speer would
provide the initial capital to start Bedrock Materials,
both men would share ownership of the corporation.
Speer initially received all of the Bedrock Materials
stock due to Adcox's financial situation following a
bankruptcy. Adcox and Speer agreed, however, that
Adcox would receive one-half of the shares of Bedrock
Materials stock once he developed the business into a
profitable one.

The following year Adcox and Speer formed
Equipment Express, Inc., which was in the business
of hauling heavy equipment for hire. In addition
to serving as vice president of Bedrock Materials
and Wesco Construction, Adcox also acted as vice
president for Equipment Express.

Sometime during 1991, Adcox concluded that he
had upheld his part of the agreement with Speer
and that he should receive one-half of the shares of
Bedrock Materials stock. Adcox spoke with Speer
on several occasions about dividing the stock of
Bedrock Materials equally. Speer continued to agree
that the men were co-owners of Bedrock Materials, but
Adcox never received any shares of Bedrock Materials
stock. According to Adcox, he did not receive
compensation as agreed from Bedrock Materials
because profits of Bedrock Materials were funneled

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

to Wesco Construction as monies owed. Although Speer continued to assure Adcox that he was an equal owner of Bedrock Materials, the business relationship between the two men had begun to sour.

As the discord over the financial situation and ownership of Bedrock Materials continued, in 1994, Adcox decided to create his own general contracting business, appellant Bedrock General,[3] to excavate, sell, and transport aggregate materials, including sand and calcium sulfate, for various commercial entities. The company also performed asphalt work. From 1994 to 1997, appellant subcontracted transportation work to Bedrock Materials and Equipment Express, excavation work to Bedrock Materials, and field work to Wesco Construction.

[3]   Due to the similarity of the names involved, we will further reference Bedrock General as "appellant" to avoid confusion.

*2 Appellant shared office space with Bedrock Materials and Adcox continued to work for both companies until Bedrock Materials was sold in 1997. In lieu of paying rent for the office space, appellant paid a portion of Bedrock Materials' payroll. When appellant was formed, employees of Bedrock Materials were offered the option of working for Adcox's new business. On occasion, appellant's employees would assist those of Bedrock Materials. Within the shared office space, the separate letterheads and phone lines for each company were used interchangeably.

Appellant contracted with the Fund to provide workers' compensation coverage for its employees for the period from January 1994 to January 1997. After an audit, the Fund concluded that appellant and Bedrock Materials were operating as a single business enterprise and that appellant's control of the employees of Bedrock Materials made the Fund liable for those employees while they were being controlled by appellant. The Fund demanded that appellant pay premiums to cover the risk associated with the additional employees. When appellant refused the demand, the Fund filed suit to recover the premiums owed.

In its suit, the Fund asserted claims for breach of contract, negligent misrepresentation, and *quantum*

*meruit.* The Fund moved for partial summary judgment solely on its breach of contract claim. *See* Tex.R.Civ.P. 166a(a). In its motion, the Fund argued that because no written agreement exists between appellant and Bedrock Materials evidencing their independence, appellant's premiums for its workers' compensation insurance policies should have been calculated according to a basis that included Bedrock Materials' employees. The Fund further asserted that, because premiums for the policies were calculated on an inaccurate basis, appellant had not paid the Fund the full amount of premiums due in exchange for workers' compensation coverage. The Fund contended that when appellant refused to pay premiums owed, it breached the terms of its contracts, namely, the insurance policies, with the Fund.

The district court granted the Fund's motion. Appellant moved to sever the partial summary judgment order from the remainder of the case for purposes of appeal and the district court granted this motion. Appellant now appeals the summary judgment order in favor of the Fund.

### The Controversy

Section 406.122 of the Texas Labor Code ("the Code") addresses status as an employee in the workers' compensation system. Tex.Labor Code Ann. § 406.122 (West 1996). According to this provision, a person performing work for a general contractor is presumed to be an employee of the general contractor. *Id.* Likewise, a subcontractor's employees are viewed as employees of the general contractor unless the subcontractor meets two conditions: (1) it operates as an independent contractor *and* (2) it enters into a written agreement with the general contractor "evidenc[ing] a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work." *Id* . § 406.122(b). A subcontractor is defined as "a person who contracts with a general contractor to perform all or part of the work or services that the general contractor has undertaken to perform." *Id.* § 406.121(5).

*3 Appellant is a general contractor who contracted work to Bedrock Materials. Section 406.122(b) therefore presumes that while Bedrock Materials employees performed work for appellant, they should have been viewed as appellant's employees. Unless

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

the requirements of section 406.122(b) are satisfied, appellant's workers' compensation premium basis must include Bedrock Materials employees who performed work for appellant.

The Texas Workers' Compensation Commission has created a form, which will constitute a written agreement as required by section 406 .122(b)(2) of the Code once executed properly by a general contractor and a subcontractor and filed[4] with the agency. This form is entitled "Agreement Between General Contractor and Subcontractor to Establish Independent Relationship" and is also known as a TWCC-85 form. Use of this form is optional; parties are free to draft their own written agreements to evidence an independent relationship.

[4]   The form instructs the hiring contractor to file the original TWCC-85 form with the Texas Workers' Compensation Commission and its workers compensation insurance carrier within ten days of the date of execution.

Specifically, the TWCC-85 form states that (i) section 406.121(2) of the Labor Code, which defines "independent contractor," has been met; (ii) the subcontractor is operating as an independent contractor; (iii) the subcontractor assumes the responsibilities of an employer for the performance of work; and (iv) "the Subcontractor and the Subcontractor's employees are not employees of the General Contractor for purposes of the Act."The form also advises, "This agreement shall take effect no sooner than the date it is signed."Thus, by its terms, the form does not take effect until it is signed by representatives of the general contractor and the subcontractor.

In its motion for summary judgment, the Fund argued that the evidence showed appellant and Bedrock Materials were not working as independent contractors and had not entered into a written agreement evidencing an independent relationship. The Fund concluded that appellant should be liable for premiums calculated to include Bedrock Materials's payroll for employees while they worked under contracts with appellant.

In its response, appellant offered copies of two TWCC-85 forms as summary judgment proof that a written agreement existed between appellant and Bedrock Materials. The first TWCC-85 form is dated February 14, 1994; the second TWCC-85 form is dated February 2, 1996 and is identified as deposition exhibit 54.[5] These forms were attached to the affidavit of appellant's risk manager, Donald D. Cook. In his affidavit, Cook acknowledges that his responsibilities as risk manager for Bedrock General included preparing and filing appropriate forms with the Fund. The forms purport to bear the signatures of Adcox as signatory for appellant and Speer as signatory for Bedrock Materials, thereby constituting a written agreement evidencing their independent relationship. The narrow question before us is whether appellant presented the district court with sufficient, competent, summary judgment proof, either to call a material fact into question, thereby precluding the Fund's entitlement to summary judgment.

[5]   These documents are not clearly identified in the record. Although two separate TWCC-85 forms are identified in deposition testimony, labeled as deposition exhibits 23 and 54, during one of the depositions the Fund's counsel noted that both exhibits were actually the same document. The exhibits at issue are not further described in the record. While appellant offers two separate TWCC-85 forms as summary judgment evidence, only one, marked as deposition exhibit 54, is addressed by testimony in the record.

*Standard of Review*

*4 A traditional motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact to be decided and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *see also Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex.1985). A genuine issue of material fact is one that impacts the outcome of the case. *Zapata v. Children's Clinic,* 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied); *Isbell v. Ryan,* 983 S.W.2d 335, 338 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). We review the propriety of a ruling on a motion for summary judgment *de novo.* See *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

Once the movant establishes a right to summary judgment, the non-movant must expressly present any reasons avoiding the movant's entitlement and must support the response with proof to establish a fact issue. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex.1979).[6] Evidence is viewed in the light most favorable to the non-movant with all reasonable inferences indulged. *Nixon*, 690 S.W.2d at 548-49. Similarly, any doubts are resolved in favor of the non-movant. *Id.*

[6]     The burden of proof, however, does not shift to the non-movant. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) ("Summary judgments must stand on their own merits").

When the district court expressly states the grounds on which summary judgment was granted, we must consider the grounds on which the district court ruled. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996).[7] In its summary judgment order, the district court concluded that appellant subcontracted work to Bedrock Materials but that no written agreement evidencing an independent relationship existed between the general contractor and subcontractor. The district court order then entered judgment in favor of the Fund for liability on its breach of contract claim "calculated on the additional payroll of employees of Bedrock Materials, Inc. who performed subcontracted work for Defendant Bedrock General Contractors, Inc. during the time period January 21, 1994 to January 21, 1997."

[7]     But a reviewing court is not limited by a recitation of grounds in a judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996). In the interest of justice, our review may consider other possible grounds for a judgment if the movant has presented these issues to the district court and has preserved them. *Id.* In this case, a review beyond the district court's judgment is not warranted because the parties have confined their briefing to the ground set forth in the court's judgment.

## DISCUSSION

In its second issue on appeal,[8] appellant contends that the district court erred by granting partial summary judgment because the evidence below raises issues of material fact. Specifically, appellant complains that fact issues exist as to whether a written agreement existed evidencing Bedrock Materials' independence from appellant. The district court expressly found that appellant subcontracted work to Bedrock Materials and carried its employees on its payroll without the required written agreement. The issue, then, is whether appellant has raised a fact issue that Adcox for appellant and Speer for Bedrock Materials either signed such a written agreement or authorized someone to sign on their behalf.

[8]     Appellant contends in its first issue that the Fund is not entitled to summary judgment because it failed to present any evidence of damages, an essential element of a breach of contract claim. *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 695 (Tex.App.-Austin 1993, writ denied). We find that the Fund did include evidence to show appellant's premiums if calculated to include Bedrock Materials's employees who worked for appellant under contracts. Specifically, the Fund included in its summary judgment proof the affidavit of Ann Pollack, Manager of the Fund's Premium Investigation Unit, with attached exhibits, including the demand letter sent to appellant, that identified the amount of unpaid premiums owed to the Fund. While partial summary judgment may be granted strictly on the issue of liability even if a genuine issue exists as to the amount of damages, Tex.R.Civ.P. 166a(a), here, the parties have stipulated that if the summary judgment were upheld on appeal, the additional unpaid premiums would be $165,000. We overrule appellant's first issue.

We must initially determine whether the Fund has met its summary judgment burden. When moving for summary judgment, a plaintiff must present summary judgment proof that supports each element of its claim to demonstrate an entitlement to judgment. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301-02 (Tex.1990). Therefore, to obtain summary judgment on the issue of liability with respect to its

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

breach of contract claim, the Fund must prove the following essential elements in a suit for breach of contract: (1) that a valid contract existed, (2) the plaintiff performed or tendered performance, (3) that the defendant breached the contract, and (4) that the plaintiff was damaged as a result of the breach. *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 695 (Tex.App.-Austin 1993, writ denied). Here, the parties do not dispute the existence of the contracts at issue, the workers' compensation insurance policies, or that the Fund provided coverage under the contracts.

**\*5** At the outset, we must determine what summary judgment evidence was properly before the district court. Because neither party obtained an express or implied ruling on its objections to the evidence and the district court did not refuse to rule, we will consider all of the evidence that was before the district court. *See*Tex.R.App.P. 33.1(a)(2). The summary judgment evidence consisted of various responses to discovery, deposition testimony, and affidavits of employees of the parties as well as the affidavit of appellant's risk manager, Donald D. Cook. The exhibits to the depositions were not included in the record.

To demonstrate that summary judgment should be granted, a movant must offer admissible evidence. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). Any fact that the movant seeks to establish conclusively must be subjected to verification or denial. *Bauer v. Jasso*, 946 S.W.2d 552, 556 (Tex.App.-Corpus Christi 1997, no writ). A matter may be conclusively established by uncontroverted testimony from an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."Tex.R.Civ.P. 166a(c).

The Fund presented summary judgment proof establishing that (i) appellant executed three contracts for workers' compensation insurance with the Fund in 1994, 1995, and 1996; (ii) the Fund performed its duties under the contract; and (iii) appellant was a general contractor that subcontracted its work to, among others, Bedrock Materials. In support of its position that no written agreement existed between appellant and Bedrock Materials, the Fund offered summary judgment evidence, the deposition testimony of Adcox and Speer, to show that the signatures on the

TWCC-85 form, marked as deposition exhibit 54, were not genuine and that Speer had not authorized anyone to sign the form on his behalf. Because the TWCC-85 form states that the agreement takes effect "no sooner than the date it is signed," the Fund maintains that the form requires valid signatures of a general contractor and a subcontractor to be effective. In this case, the valid signatures needed to include those of Adcox and Speer or of any person authorized to sign the form.

During his deposition, Adcox specifically denied signing the TWCC-85 form at issue. Likewise, in his deposition, Speer testified unequivocally that he did not sign the TWCC-85 form at issue. In addition, Speer stated that he had not authorized anyone to sign this form on his behalf.

Challenging Speer's deposition testimony, appellant cites us to portions of Speer's deposition testimony that contain inconsistencies regarding whether he authorized other individuals to sign his name. This testimony, however, is limited to Speer recalling one instance when he gave an individual power of attorney to purchase a dump truck on his behalf and another when he authorized an employee to sign company payroll checks while he was on vacation. Speer also admitted to authorizing Adcox to sign payroll checks on several occasions. This evidence, however, does not controvert Speer's testimony that he did not sign the TWCC-85 form at issue and that he did not authorize anyone else to sign this form on his behalf. We conclude that this evidence is sufficient to support summary judgment because it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."Tex.R.Civ.P. 166a(c).

**\*6** Contending that it has raised a genuine issue of material fact, appellant refers us to an exhibit attached to its response to the Fund's motion for summary judgment, the affidavit of Donald D. Cook. Summary judgment proof must be admissible under the rules of evidence. *Longoria*, 938 S.W.2d at 30. Affidavits in support or in opposition to a motion for summary judgment must be made on personal knowledge, must set forth such facts that would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Tex.R.Civ.P. 166a(f); *see also Ryland Group, Inc. v.*

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

*Hood,* 924 S.W.2d 120, 122 (Tex.1996). A conclusory witness affidavit will not support a summary judgment. *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999). The prohibition of conclusory evidence does not mean that logical conclusions based on stated underlying facts are improper.*Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no pet.). But conclusory evidence is improper if it fails to explain the basis of the witness's statements to link the conclusions to facts. *Id.*

Attached to Cook's affidavit are six pages of records consisting of copies of transmittal letters, two TWCC-83 forms, and two TWCC-85 forms. A transmittal letter dated February 14, 1996, is identified as deposition exhibit 54 and appears to include TWCC-83 and -85 forms dated February 2, 1996. [9] The forms purport to bear the signature of Adcox on behalf of appellant and Speer on behalf of Bedrock Materials.

[9]    At one point in Speer's deposition, the parties indicate that Exhibit 54 is a duplicate or the "same as" Exhibit 23. Although the record is not clear, we will assume that Exhibit 54 is an exhibit containing three pages and consisting of a transmittal letter, a TWCC-83 form, and a TWCC-85 form.

Although Cook testified extensively by deposition, in his affidavit he acknowledged only that he had been responsible for preparing and filing "appropriate forms" with the Fund. In addition to exhibit 54, an unmarked TWCC-85 form dated February 14, 1994 is attached to Cook's affidavit. The affidavit makes no mention of the signatures in question, averring only that the documents were "*prepared* by or under his direction."

This testimony, then, does not establish who signed the TWCC-85 forms, nor does it establish that any unknown person who *might* have signed the forms was authorized by Adcox, Speer, or any other authorized person. We reject any legal or factual conclusions that either of these attached TWCC-85 forms constitutes valid written agreements because there is no supporting basis in fact.*Earle,* 998 S.W.2d at 890. Also, no facts are presented in this affidavit to permit us to reasonably infer the validity of either TWCC-85 form or to raise a doubt about the asserted invalidity of exhibit 54.

Appellant also asserts that the 1994 TWCC-85 form and exhibit 54 attached to Cook's affidavit are evidence alone that a written agreement existed between appellant and Bedrock Materials. The record, however, is devoid of any specific reference to the 1994 TWCC-85 form much less evidence that, as required by its terms, the 1994 TWCC-85 form was signed by the representatives of appellant and Bedrock Materials or by someone authorized by these representatives. We believe the only possible written agreement in the record about which a fact issue could be raised is exhibit 54.

**\*7** Appellant further argues that an issue of material fact exists regarding whether Speer authorized someone to sign exhibit 54 on his behalf. Appellant first points to Adcox's deposition testimony, asserting that Speer authorized him to sign checks, insurance forms, and other documents on behalf of both appellant and Bedrock Materials. Adcox testified that while he did not sign exhibit 54, he authorized other employees to sign various documents, including TWCC documents, on his behalf. In contrast, Speer testified that he did not sign exhibit 54 or authorize anyone to sign the form on his behalf. Appellant contends that because Adcox testified that he and Speer both authorized others to sign their names on unspecified documents that a fact issue exists as to whether they signed the TWCC-85 form at issue. We disagree.

Adcox did not testify that he or Speer authorized anyone to sign exhibit 54. Adcox does not assert that he had personal knowledge that Speer authorized anyone to sign this exhibit nor does he claim to recognize the handwriting on the form. Rather, Adcox asserts in a conclusory manner that Speer authorized others to sign his name. Conclusory statements devoid of the requisite facts are insufficient to raise fact issues on summary judgment. *Ryland Group, Inc.,* 924 S.W.2d at 122. Because Adcox's testimony does not address the specific document at issue here, we must conclude that his testimony lacks a sufficient factual basis to raise a genuine issue of material fact.

Appellant also offers the testimony of Kathy Holmes, one of appellant's employees who had previously worked for Bedrock Materials. During her deposition,

Bedrock General Contractors, Inc. v. Texas Workers'..., Not Reported in...

2001 WL 253594

Holmes was shown a TWCC-85 form designated as exhibit 23, which is not identified or otherwise included in the record, as well as exhibit 54. Holmes was unable to identify the signature on the exhibit as that of Speer. She also did not testify that she had personal knowledge of Speer authorizing someone to sign the form.

Appellant's contention that a fact question exists turns on the deposition testimony of Donald Cook. Consistent with Adcox's testimony, Cook stated in his deposition that on occasion Adcox and Speer had authorized him to sign their signatures. But Cook could not identify the signatures on deposition exhibits 23 and 54. Cook further testified that the signatures on exhibit 23 "could be General Contractors, an individual representing them and an individual representing Bedrock Materials."When asked whether the signature on exhibit 23 was his, Cook testified that he was unable to identify it. He also testified that it was "possible" that he had signed exhibit 23 and later that it was "possible" that Adcox and Speer had signed the document on behalf of the two companies. At best, Cook's testimony is internally inconsistent. Similarly, when presented with exhibit 54, Cook could not identify the signatures as his own. Cook also did not testify that he had personal knowledge of Speer authorizing someone to sign the form.

**\*8** When, as here, the moving party presents competent summary judgment evidence establishing its entitlement to summary judgment, and the non-movant's sole response is to assert its hypothesis of the facts or other possible *theories* of the facts without an underlying factual basis from which one could draw logical conclusions, we must conclude that appellant has failed to raise a fact issue. The evidence does not show that any known person signed the documents at issue or that either Adcox or Speer authorized anyone to sign these particular documents.

No one whom Speer may have authorized to sign on his behalf is claiming to have signed a TWCC-85 form with that authority. At most, Adcox testified that Speer *likely* authorized someone to sign similar forms but this testimony fails to address the documents attached to the Cook affidavit. This testimony also does not address a universe of

documents for which Speer had previously authorized the use of his signature. Moreover, Cook's deposition testimony, even if taken as true, is contradictory. *See*Tex.R.Civ.P. 166a(c). We conclude that appellant has not raised a fact issue concerning the existence of a written agreement between appellant and Bedrock Materials that evidenced an independent relationship. [10] Accordingly, we overrule issue two.

[10]   Appellant also claims that a fact issue exists with respect to whether Bedrock Materials operated as an independent contractor. Because we conclude that a written agreement did not exist, we need not reach this argument. *See*Tex.Labor Code Ann. § 406.122(b) (West 1996) (requiring proof that a subcontractor operate as an independent contractor *and* that the subcontractor has entered into a written agreement with the general contractor).

Citing to *Williams v. Brown & Root, Inc.*, 947 S.W.2d 673 (Tex.App.-Texarkana 1997, no writ), appellant further asserts, that the phrase "written agreement" referenced in section 406.122 of the Code should have the same meaning as that attributed to the phrase in section 406.123. Because appellant did not present this argument to the district court, we decline to address it on appeal. *See*Tex.R.Civ.P. 166a(c).

In its third issue, appellant argues that the Fund must accept an "authorized" signature as well as a signature of a company's owner or officer on a TWCC-85 form. The Fund has not contended that it would refuse to accept the signature of an authorized individual. We overrule issue three.

By its fourth issue, appellant claims that it cannot be held liable for past premiums "absent an injury and a valid independent contractor agreement" and that the Code does not permit the Fund to impose a penalty in the form of retroactive premiums. Because appellant did not present these arguments to the district court, we decline to address them on appeal. *See*Tex.R.Civ.P. 166a(c). Issue four is overruled.

Having examined the summary judgment record and finding no controverting proof of the summary judgment evidence provided by the Fund, we conclude that the Fund has established its entitlement to partial summary judgment and that appellant has failed to

raise any genuine issue of material fact. Therefore, we further conclude that the trial court properly granted partial summary judgment on the breach of contract claim in favor of the Fund.

Because we conclude that the Fund demonstrated that it was entitled to judgment as a matter of law and that appellant failed to establish that a genuine issue of material fact existed, we affirm the district court's judgment.

## CONCLUSION

**All Citations**

Not Reported in S.W.3d, 2001 WL 253594

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**History (1)**

**Direct History (1)**

1. Bedrock General Contractors, Inc. v. Texas Workers' Compensation Ins. Fund ↘
   2001 WL 253594 , Tex.App.-Austin , Mar. 08, 2001 , review denied ( May 31, 2001 )

2015 WL 127777

2015 WL 127777
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
Court of Appeals of Texas,
Corpus Christi-Edinburg.

TIC Energy and Chemical, Inc., Appellant,
v.
Kevin Bradford Martin, Appellee.

NUMBER 13–14–00278–CV   |
Delivered and filed January 08, 2015

**On appeal from the 135th District Court of Calhoun County, Texas.**

**Attorneys and Law Firms**

James T. Sunosky, Randy G. Donato, for TIC Energy and Chemical, Inc.

James W. Cole, for Kevin Bradford Martin.

Before Chief Justice Valdez, and Justices Rodriguez and Garza

## MEMORANDUM OPINION

Memorandum Opinion by Justice Garza

*1 In this permissive interlocutory appeal, see TEX. R. APP. P. 28.3, appellant TIC Energy and Chemical, Inc. ("TIC") argues that the trial court erred in denying its motion for summary judgment in a lawsuit brought by appellee, Kevin Bradford Martin. The issue presented is whether the Texas Workers' Compensation Act ("TWCA") bars suit against an independent subcontractor whose employees were covered by the general contractor's workers' compensation insurance policy. We affirm.

## I. BACKGROUND

Martin, an employee of Union Carbide Corporation ("UCC"), suffered injuries while attempting to service heavy equipment at UCC's Seadrift, Texas, facility on September 5, 2012. The injuries necessitated the amputation of Martin's leg. Martin made a claim for and received benefits under UCC's worker's compensation insurance policy. He subsequently sued TIC, a subcontractor at the Seadrift facility, for negligence. TIC filed a motion for traditional summary judgment alleging that Martin's suit is barred under the exclusive remedy provision of the TWCA. *See* TEX. LAB. CODE ANN. § 408.001 (West, Westlaw through 2013 3d C.S.). After a hearing, the trial court denied the motion. The trial court subsequently granted TIC permission to appeal the ruling, *see* TEX. CIV. PRAC. & REM. CODE ANN.. § 51.014(f) (West, Westlaw through 2013 3d C.S.), and we accepted the appeal. *See* TEX. R. APP. P. 28.3.

## II. DISCUSSION

TIC argues by one issue that the trial court erred in denying its motion for summary judgment "because, pursuant to the Texas Workers' Compensation Act, an employee of a general contractor is barred as a matter of law from asserting common law claims for a work-related injury against a subcontractor subscribing to the general contractor's worker's compensation policy."

### A. Standard of Review
In advancing a traditional motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). We review the trial court's summary judgment ruling de novo. *Joe*, 145 S.W.3d at 156; *Nalle Plastics Family LP. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.–Corpus Christi 2013, pet. denied). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

### B. Applicable Law

The TWCA provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." TEX. LAB.CODE ANN. § 408.001 (a).

Section 406.123 of the TWCA provides in relevant part:

> (a) A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

> *2 ....

> (d) If a general contractor ... elects to provide coverage under Subsection (a) ..., then, notwithstanding Section 415.006,[1] the actual premiums, based on payroll, that are paid or incurred by the general contractor ... for the coverage may be deducted from the contract price or other amount owed to the subcontractor ... by the general contractor....

> (e) An agreement under this section makes the *general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.*

Id. § 406.123 (West, Westlaw through 2013 3d C.S.) (emphasis added). On the other hand, section 406.122 provides that:

> (b) A subcontractor and the subcontractor's employees are *not employees of the general contractor for purposes of this subtitle* if the subcontractor:

> > (1) is operating as an independent contractor; and

> > (2) has entered into a written agreement with the general contractor that evidences a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work.

Id. § 406.122(b) (West, Westlaw through 2013 3d C.S.) (emphasis added).[2]

[1] Labor code section 415.006, entitled "Employer Chargebacks Prohibited," provides that it is an "administrative violation" for an employer to "collect from an employee, directly or indirectly, a premium or other fee paid by the employer to obtain workers' compensation insurance coverage, except as provided by Sections 406.123 and 406.144." TEX. LAB. CODE ANN. § 415.006 (West, Westlaw through 2013 3d C.S.).

[2] In the statutes cited above, "this subtitle" refers to the entire TWCA; i.e., subtitle A of title 5 of the labor code. See generally id. §§ 401.001–419.007 (West, Westlaw through 2013 3d C.S.).

## C. Analysis

TIC's summary judgment motion argues that the exclusive remedy provision applies to Martin's suit because, even though TIC is not Martin's employer, TIC is deemed to be a fellow "employee" of UCC under section 406.123 of the TWCA. *See id.* § 408.001(a) (providing that exclusive remedy provision extends to claims made against an "employee of the employer"). TIC contends that it is a "deemed employee" of UCC because the two parties entered into a written agreement under which UCC provided workers' compensation insurance coverage to TIC and TIC's employees through an "Owner–Controlled Insurance Program" ("OCIP") operated by The Dow Chemical Company ("Dow"), UCC's corporate parent. *See id.* § 406.123(a), (e); *see also HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 360 (Tex. 2009) (holding that an OCIP may qualify as "providing" workers' compensation insurance to subcontractors under section 406.123(a)). TIC also alleged that, "[a]cting under Dow's authority and in order to implement the OCIP, [UCC] deducted the cost of the actual OCIP premiums, based on payroll, for TIC's coverage from TIC's earnings under the Agreement." *See* TEX. LAB. CODE ANN. § 406.123(d).

In support of its motion, TIC attached a March 13, 2008 "Agreement for Services" between UCC and Gulf States, Inc. ("Gulf States"), TIC's predecessor, under which Gulf States agreed to provide certain

mechanical maintenance services at the Seadrift facility. The agreement contained the following provision regarding insurance coverage:

*3  18.3 Insurance Provided under "Owner Controlled Insurance Program"—UCC agrees upon the terms and conditions contained herein, as part of [Dow's OCIP], to procure, maintain during the life of this Contract, and pay for, in the name of [Gulf States], Workers' Compensation and Employer's Liability insurance and Commercial General Liability insurance in amounts equal to or, at UCC's sole discretion, greater than the minimum limits, required in Subsections 18.1.1 and 18.1.2 of the Contract.

....

18.3.1 The insurance in Section 18.3 is for the protection of [Gulf States] and any Subcontractors who will be performing services on UCC property as part of the Contract....

UCC also attached an affidavit by a Dow representative which stated that "Dow's OCIP provided workers' compensation insurance coverage for [UCC]'s contractors and/or subcontractors enrolled in the program for on-site activities at the Seadrift facility." The Dow representative further averred that Gulf States's name change to TIC was properly reported to the OCIP administrator and that, "[a]t all material times, including at the time made the basis of this suit, TIC was an enrolled and active participant in Dow's OCIP program."

In response to TIC's summary judgment motion, Martin argued that the exclusive remedy provision did not apply because: (1) TIC is an independent contractor of UCC; and (2) TIC entered into a contract with UCC under which TIC "assume [d] the responsibilities of an employer for the performance of work." *Id.* § 406.122(b). Martin notes that independent contractors are explicitly excluded from the TWCA's definition of "employee." *See id.* § 401.012(b) (West, Westlaw through 2013 3d C.S.). Martin concedes on appeal that TIC's agreement with UCC is "similar" to the type of agreement contemplated by section 406.123. *Seeid.* § 406.123.

However, he argues that section 406.123 is trumped by the language of the preceding statute, section 406.122, which states that a subcontractor who enters into an agreement with a general contractor and "assumes the responsibilities of an employer for the performance of work" is *not* a deemed employee. *Id.* § 406.122. Martin further notes that, under the agreement at issue, TIC—not UCC—is responsible for adequately supervising TIC's employees; for ensuring that TIC's employees follow work site rules and regulations; for "maintaining acceptable safety performance"; and for investigating incidents that occur on the work site. Finally, Martin points out that the agreement contains specific provisions designating UCC as the "statutory employer" for "Contractors providing Services in Louisiana" and "Contractors providing Services in Michigan" but that there is no similar clause for Texas workers. Martin argues that there is at least a disputed issue of material fact as to whether the agreement "evidences a relationship in which [TIC] assumes the responsibilities of an employer for the performance of work." *Id.* § 406.122(b)(2).

TIC does not appear to dispute the notion that it operated as an independent contractor; instead, it argues that it must be a "deemed employee" under section 406.123 regardless of its independent status. In support of its position, TIC cites *Garza v. Zachry Construction Corp.,* in which the San Antonio court of appeals held that a subcontractor was properly considered a "deemed employee" under section 406.123 and was therefore entitled to assert the exclusive remedy bar. 373 S.W.3d 715, 721 (Tex.App.–San Antonio 2012, pet. denied). This was the case even though the contract at issue contained language specifying that the subcontractor was an "independent contractor." *Id.* The First Court of Appeals reached a similar conclusion in *Etie v. Walsh & Albert Co.,* 135 S.W.3d 764 (Tex. App.–Houston [1st Dist.] 2004, pet. denied). In *Etie,* the injured plaintiff asserted that the appellee, a lower-tier subcontractor, could not be a "deemed employee" because the TWCA's definition of "employee" excludes independent contractors, and the subcontractor had conceded at oral argument that it was an independent contractor. *Id.* at 767 (citing TEX. LAB. CODE ANN. § 401.012(b)(2)). [3] The court disagreed, noting that the TWCA "[c]learly ... contemplates that independent contractors may, in

certain circumstances, be considered 'employees' despite not meeting the definition of an 'employee' in section 401.012(b)(2).' " *Id.* The court held that "the provision of workers' compensation insurance transforms an independent contractor into a 'deemed employee' " for TWCA purposes. *Id.* And the court saw "no reason why this shift in status from 'independent contractor' to 'deemed employee,' with its concomitant protections, should be denied to lower tier subcontractors." *Id.* The court held that "the purposes of the [TWCA] are best served by deeming immune from suit all subcontractors and lower tier subcontractors who are collectively covered by workers' compensation insurance"; but it hastened to add that "we do not abrogate the right of an injured worker to sue a subcontractor or its employees when that subcontractor retains its status as an independent contractor by choosing not to participate in workers' compensation coverage." *Id.* at 768.

3    "Employee" is defined in the TWCA as "each person in the service of another under a contract of hire, whether express or implied, or oral or written." *Id.* § 401.012(a). The term includes:

> (1) an employee employed in the usual course and scope of the employer's business who is directed by the employer temporarily to perform services outside the usual course and scope of the employer's business;
> (2) a person, *other than an independent contractor or the employee of an independent contractor,* who is engaged in construction, remodeling, or repair work for the employer at the premises of the employer; and
> (3) a person who is a trainee under the Texans Work program established under Chapter 308.

> *Id.* § 401.012(b) (emphasis added).

*4    Martin argues that *Garza* and *Etie* are distinguishable because they did not discuss section 406.122.[4] We agree. Although independent subcontractors were found in those cases to be "deemed employees" for purposes of the TWCA, the plaintiffs in those cases apparently did not argue that section 406.122, in particular, precluded the subcontractors from asserting "deemed employee" status. *Cf. Garza,* 373 S.W.3d at 719 (plaintiff argued that general contractor and subcontractor "contractually agreed [the subcontractor]'s employees

would not be considered [the general contractor]'s employees for workers' compensation purposes"); *Etie,* 135 S.W.3d at 766–67 (plaintiff argued that subcontractor could not be "deemed employee" because TWCA's definition of "employee" excludes independent contractors and that the exclusive remedy bar may not be asserted by lower-tier contractors). *Garza* and *Etie* are therefore not controlling.

4    In 2001, the Austin court of appeals had the opportunity to apply section 406.122 when it considered whether a general contractor was required to pay workers' compensation insurance premiums for a subcontractor's employees. *Bedrock Gen. Contractors, Inc. v. Tex. Workers' Comp. Ins. Fund,* No. 03–00–00426–CV, 2001 WL 253594, at *1–4 (Tex.App.–Austin Mar. 8, 2001, pet. denied). Citing section 406.122(b), the court held that the general contractor was liable for the premiums because there was no evidence of a "written agreement between [the general contractor and subcontractor] that evidenced an independent relationship." *Id.* at *8; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 406.122(b). The court did not address whether an independent contractor may also be a "deemed employee" under section 406.123(e).

The parties direct us to no other cases, and we find none, applying section 406.122. In particular, there appear to be no cases explicitly addressing a scenario, such as the one presented here, where a subcontractor enters into *both:* (1) an agreement with a general contractor under which the general contractor agrees to provide workers' compensation coverage to the subcontractor's employees, *see* TEX. LAB.CODE ANN. § 406.123(a); *and* (2) a written agreement with the general contractor under which the subcontractor assumes the responsibilities of an employer for the performance of work. *See id.* § 406.122(a). In such a scenario, section 406.123(e) unambiguously states that the general contractor is deemed the "employer" of the subcontractor for TWCA purposes, but section 406.122(b) unambiguously states that the subcontractor is *not* deemed an "employee" of the general contractor for TWCA purposes. *See id.* §§ 406.122(b), 406.123(e).

We therefore conclude that, as applied to these facts, the two statutes irreconcilably conflict. But TIC did not present this issue to the trial court in its motion

for summary judgment; in fact, TIC's motion did not mention section 406.122 at all.[5] Moreover, neither party argued, at the trial court or on appeal, that the statutes conflict; rather, they both argue that one statute applies and the other does not.[6] The issue of how to resolve the conflict between the statutes was thus not before the trial court, and so we do not consider it here.[7] *See* TEX. R. APP. P. 33.1(a), 47.1. We merely hold that, because its motion did not establish that section 406.122(b) does not apply, TIC did not meet its summary judgment burden to establish its entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Joe*, 145 S.W.3d at 157. The trial court did not err in denying TIC's summary judgment motion.

[5]    Despite the fact that Martin argued for the application of section 406.122 in his response to TIC's summary judgment motion, TIC also does not address section 406.122 in its initial appellate brief.

[6]    For example, in its reply brief on appeal, TIC argues that section 406.123 "provides an exception to the general framework of section 406.122 and deems the subcontractor the statutory employee of the general contractor, but only for workers' compensation insurance and nothing else." Martin argues in his brief on appeal that "[t]he clear intention of [section] 406.122(b) is to specify a subset of subcontractors who will *not* be deemed employees by the operation of [section] 406.123(e)."

[7]    The summary judgment pleadings contained in the record before this Court do not contain any citations to cases or other authority regarding the resolution of irreconcilably conflicting statutes. On appeal, TIC cites only one such case, *Jackson v. State Office of Administrative Hearings*, 351 S.W.3d 290, 298 (Tex. 2011) (setting forth the rule that "a more specific statute will prevail over a conflicting general provision"); Martin cites none.

### III. CONCLUSION

**\*5** We affirm the judgment of the trial court.

**All Citations**

Not Reported in S.W.3d, 2015 WL 127777

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**History (1)**

**Direct History (1)**

1. TIC Energy and Chemical, Inc. v. Martin
2015 WL 127777 , Tex.App.-Corpus Christi , Jan. 08, 2015 , petition for review filed ( Feb 20, 2015 )